CENTRAL ELECTRIC & TELEPHONE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99731.   Promulgated August 4, 1942.

*Clarence H. Ross, Esq.,* and *Melvin A. Hardies, Esq.,* for the petitioner.

*Angus Roy Shannon, Jr., Esq.,* for the respondent.

### OPINION.

DISNEY: This proceeding involves income taxes for the years 1934, 1935, and 1936 and excess profits taxes for 1934 and 1935, also penalties. Deficiencies were determined against the Central West Public Service Co. as follows:

| Kind of tax | Year | Deficiency | Penalty |
|---|---|---|---|
| Income tax | 1934 | $36,776.14 | |
| Income tax | 1935 | 36,734.94 | $1,836.75 |
| Income tax | 1936 | 4,513.69 | 225.68 |
| Total | | 78,024.77 | 2,062.43 |
| Excess profits tax | 1934 | 13,373.14 | |
| Excess profits tax | 1935 | 13,358.16 | 667.91 |
| Total | | 26,731.30 | 667.91 |

Notice was given by the Commissioner to the petitioner of its liability for the above amounts as transferee of the assets of that company. Due to elimination by stipulation of issues which will be reflected in decision under Rule 50, and concessions upon brief, the only issues remaining for determination are: (1) Was the petitioner's transferor entitled to deduct interest which was accrued in the amount of $394,-716.24 upon bonds for the period April 12 to December 31, 1934, and accrued in the amount of $550,575 for 1935? As more particularly stated below, only amounts considerably less than the above are actually put in issue by the petitioner upon brief, since it argues only as to amounts sufficient to offset the taxable income determined. (2) Did the petitioner's transferor suffer a deductible loss in 1935 because of abandonment of certain ice storage properties? (3) Was the petitioner's transferor liable for a penalty for the year 1938 for failure to file timely return? Upon the first and major issue all pertinent facts were stipulated, and we adopt the stipulation by reference and find the facts therein agreed upon. They will be recited herein only so far as necessary to discussion.

Summarized, the stipulated facts, so far as left material after the stipulations and concessions, are as follows:

The petitioner, a Delaware corporation, filed its income and excess profits tax returns for the taxable years with the collector for the District of Iowa.

The petitioner is admittedly transferee from and liable as such transferee for any deficiency in income or excess profits tax determined against the Central West Public Service Co., hereinafter sometimes called the company. The company was at all times on an accrual basis of keeping its books and making its Federal tax returns. It had outstanding on January 1, 1934, large amounts of bonds, also debentures and notes. Interest had been in arrears since 1932. On all of these interest was accrued on the company's books for 1934 and 1935. From April 12 until June 8, 1934, the company was in voluntary receivership and from that date was in the hands of trustees in section 77-B proceedings in the United States District Court. A special master appointed by the court found that the company was insolvent on June 8, 1934, and at date of report on December 24, 1935. The court, on January 20, 1936, in its order confirming in general the master's report, specifically left the question of insolvency open in case of rehearing due to failure of the court to confirm the plan, or due to failure of consummation of the plan. A plan of reorganization was confirmed by the court on February 21, 1936, and the properties of the company were transferred as of February 29, 1936, to the petitioner, and another corporation, the Central West Public Service Co., both as successors to the company.

The receivers and trustees continued the company's practice of keeping books and filing income tax returns on the accrual basis. Interest was accrued on the company's bonds in the amount of $156,074.17 from January 1 to April 12, 1934, in the amount of $394,716.24 from April 12 to the end of the year 1934, and in the amount of $550,575 for the year 1935. The payment of the bonds and interest thereon was secured by properties mortgaged and pledged thereunder, and although the bonds were in default as to payment of interest from the year 1932, no payment of interest on such bonds was made during the trustee proceedings. The court approved the claims for the amount of the bonds and interest accrued thereon as being claims secured by fixed properties and securities. Prior to January 1, 1934, $275,425 had been deposited in trust by the company for the payment of coupons maturing in 1932 on the bonds. This cash remained in trust and was paid to the petitioner about June 10, 1936, pursuant to the plan of reorganization. At that time Chicago banks held $449,311.28 in trust for the holders of the bonds and included that amount in $1,109,576.61 paid to the trustees and by them to the petitioner. The balance paid to petitioner represented all earnings of the properties during the trusteeship, plus certain earnings from February 29, 1936, to June 10, 1936.

Under the plan of reorganization as confirmed the holder of each $1,000 principal amount of bonds received $350 principal amount of new mortgage bonds dated January 1, 1935, with semiannual interest coupons; $300 par value of preferred stock dated January 1, 1935, with provision for 6 percent cumulative dividends; and 35 shares of $1 par value common stock, all issued by the petitioner; also voting trust certificates for 10 shares of $5 par value common stock of the Central West Public Service Co. and $5.50 in cash. Pursuant to the plan of reorganization properties consisting of cash and securities of a total market value of $7,128,612.40 were delivered to the holders of the company's bonds as of February 21, 1936.

The earnings of the company for 1935 were $202,417.38 after payment of interest on the new bonds and before deduction for Federal income taxes. With the approval of the court the petitioner paid $179,637.50 interest on the new bonds, for 1935, and paid dividends on the cumulative preferred stock. The amount of such payments for 1935 to the holder of each $1,000 principal amount of old bonds was $35.50.

The holders of the old bonds, by virtue of the pledge of all bonds and stock of the company's subsidiaries, were entitled during the period of trusteeship, from April 12, 1934, to February 29, 1936, to all interest accruing on the bonds so pledged, also to all earnings of the physical properties subject to the lien of the bonds; and the

unsecured creditors were entitled to the earnings from unpledged assets. The pledged assets constituted 93.7 percent of the company's earning assets, so that the holders of the old bonds were entitled to 93.7 percent of the operating earnings of the company for the period under consideration, and to all interest accrued on pledged bonds of the company's subsidiaries and all earnings available for dividends on the pledged stock of subsidiaries. Such earnings to which the holders of old bonds were entitled amounted to $334,399.55, for the period from April 12, 1934, to the end of that year, and for the year 1935 they amounted to $473,247.31. Of the earnings for 1934, $185,680.86, and of earnings for 1935, $110,412.22, was held by Chicago banks in trust for the bondholders and paid over by the banks to the trustees after confirmation of the reorganization, and then was paid to the petitioner.

The return filed for 1934 showed a net loss of $226,153.48. In determining deficiency the Commissioner added $493,616.29 to income, resulting in a taxable net income of $267,462.81. For 1935 the return showed a net loss of $219,799.15. In determining the deficiency the Commissioner added to income $486,962.32, with the result of $267,163.17 taxable net income. The additions to income consisted in part of interest on the funded debt of the company to the extent of $716,334.13 for 1934 and $714,410 for 1935.

On the ground that the amount of taxable income of the company for the years 1934 and 1935, as determined by the Commissioner, is less than the interest accrued from April 12, 1934, to December 31, 1935, on the bonds alone, the petitioner offers no argument as to notes and debentures. It is apparent that if the company was entitled to deduction of such interest on the bonds, to the extent of $267,462.81 in 1934, after April 12, and $267,163.17 in 1935, there is no tax due, since the allowance of such amounts would offset the taxable income asserted.

The accrued bond interest from April 12, 1934, to the end of that year was $394,716.24. For the year 1935 it was $550,575. The bonds were secured by certain assets and the earnings thereon. Such assets produced earnings in 1934, after April 12, of $334,399.55, and during 1935 such earnings were $473,247.31. These amounts are much larger than the taxable income asserted by the Commissioner. In our opinion the position of the petitioner should be sustained. It is a cardinal principle of bankruptcy law that secured claims are entitled, to the extent of the agreed interest accruing during the period of bankruptcy, to the earnings for that period from the pledged assets. The same applies to receiverships. *Rohrer* v. *Deatherage*, 168 N. E. 266; *In re Wakey*, 50 Fed. (2d) 869; *American Iron & Steel Mfg. Co.* v. *Seaboard Airline Railway Co.*, 233 U. S. 261; *Mortgage Loan*

*Co.* v. *Livingston,* 45 Fed. (2d) 28; *Ticonic Bank* v. *Sprague,* 303 U. S. 406. The interest is entitled to the same priority as the principal; *Consolidated Rock Co.* v. *Du Bois,* 312 U. S. 510; and the current earnings of the secured assets are applicable to the interest accruing upon the secured obligation. *Sexton* v. *Dreyfus,* 219 U. S. 339.

It follows that, since the earnings upon the assets hypothecated as security for the bonds, for the periods here in question, exceeded the taxable income determined, and were applicable upon the interest accruing, there can remain no question because of insolvency under such cases as *Zimmerman Steel Co.,* 45 B. T. A. 1041, for under such circumstances it can not reasonably be said that that situation precluded any reasonable certainty that the interest would be paid. The secured bondholders had a claim *in rem* against the pledged assets, and their earnings, not limited by the general status of the obligor company as to solvency or insolvency. Not only was there no lack of reasonable certainty of payment of interest, as upon an unsecured claim against an insolvent, but there was under the pledgees' legal position certainty of payment to the extent of the earnings upon the pledged property; and that such earnings were in fact more than the net taxable income here involved only serves to accentuate the negative of the uncertainty discerned in the *Zimmerman Steel Co.* case. We conclude that there was error in disallowing the deduction for accrued interest claimed, at least to the extent of the earnings from pledged assets.

In addition to the above, we think that *Hummel-Ross Fibre Corporation,* 40 B. T. A. 821, and *Shamrock Oil & Gas Co.,* 42 B. T. A. 1016, are applicable. It is true, as the respondent points out, that insolvency does not affirmatively appear in either of those cases, but it is equally true that insolvency does not affirmatively appear in the facts involved in this proceeding. Although the special master found insolvency on June 8, 1934, and at the date of his report, December 24, 1935, the court, although in its order it approved in general most of the matters in the report, specifically left the question of insolvency open, and we make no finding of insolvency. Section 77–B does not require, as a prerequisite to a reorganization thereunder, that the corporate debtor be insolvent, but only requires allegation and proof either of insolvency or of inability to meet debts as they mature. Inability to meet debts as they matured appears in the *Hummel-Ross Fibre Corporation* and *Shamrock Oil & Gas Co.* matters, as well as here, for there was in all three cases approximately the same period of arrearages in interest. In both of those cases and here there were reorganization and the issuance of new securities for old securities. We there held that the interest accruing upon the

old secured claims was properly deducted. In our opinion the whole story of the situation here involved indicates that there was no uncertainty as to payment of the interest more than in the two cases above referred to, that the consideration for exchange of securities and interest thereon for other securities was the same here, and that they may not logically be distinguished. The right to the accrued interest was, as provided by subsection (b) of section 77–B of the Bankruptcy Act, modified or altered through the issuance of new securities, and in effect upon the final confirmation of the plan of reorganization the old claims, including the claim to accrued interest, were thereby discharged or paid. We think the rationale of *Hummel-Ross Fibre Corporation* and *Shamrock Oil & Gas Co.* can not be avoided in this proceeding.

Although the petitioner urges other arguments in support of deductibility of the accrued interest, the conclusions to which we come above render unnecessary of consideration such additional points as well as the other issues presented as to loss by abandonment and penalty; as to which issues, therefore, we have not considered it necessary to find facts.

*Decision will be entered under Rule 50.*