TEXAS GAS DISTRIBUTING COMPANY, BY H. HARPER MCKEE, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 112785.   Promulgated January 18, 1944.

*C. F. Rothenburg*, *Esq.*, for the petitioner.
*P. J. Cavanaugh*, *Esq.*, for the respondent.

58

**OPINION.**

VAN FOSSAN, *Judge*: In the first issue the petitioner contends that it was insolvent at the time of the sale of all of its assets to Russ and that hence the transaction which relieved it of its liabilities, the $400,000 note and $108,649 in accounts payable, freed no assets usable by the petitioner for other purposes. Petitioner concedes that the cash received represents income and so treated it. The respondent applies the conventional rule of computing gain or loss, arguing that the gain from the sale of capital assets by a corporation is unaffected by its financial condition.

This case well illustrates the difference between a realistic and a theoretical treatment of a tax problem. To be taxable, income, whether resulting from ordinary business transactions or from the sale of capital assets, must be "derived" by the taxpayer. It does not result from a speculative calculation based on a rule of thumb, with no regard to the reality of the situation.

Briefly the facts are these: Before the sale to Russ the petitioner owed approximately $108,000 of debts. It also was liable for the payment of its $400,000 note owed to Utilities. Its entire assets had a fair market value of $235,000. Thus its liabilities exceeded its assets by $173,000, and consequently it was hopelessly insolvent.

After the sale it had $14,610 in cash and no liabilities except outstanding capital stock of the par value of $5,844. We are not concerned with the motives that prompted Russ to pay the $14,610 or with the reasons why Utilities exchanged its $400,000 note for Russ's certified check for $221,000. From the transaction the petitioner emerged with no property except the $14,610 in cash and with no debts. It returned as income the amount of money so received and paid the tax on it. About $11,000 was left for distribution to the stockholders.

The respondent calculates his proposed deficiency by using the cost basis of the assets sold and the full face value of the obligations from which the petitioner was released. His method of computing the tax, together with the deficiency arising from the second issue, resulted in a deficiency in tax of over $14,000.

The deficiency was based largely on the one transaction completed under the contract of November 2, 1940. There was no accumulation of profit in past years or any other such intervening factor indicating a gain on which the collection of tax had been deferred. During its entire existence, with the exception of a small profit in 1936, the petitioner had consistently operated at a loss. Its operating deficit gradually mounted to over $58,000 on December 31, 1940. By its highly advantageous deal with Russ it succeeded in wiping out all its liabilities, except its capital stock, and obtaining a substantial cash payment, which it treated as income.

As above noted, the petitioner contends that since it was insolvent the transaction resulted in the freeing of no assets whatever except the cash received and that, therefore, except for the cash, it derived no taxable gain from the sale. We think this position is fundamentally sound. The petitioner had obligations aggregating $508,000. These were discharged by the means of the sale to Russ, who assumed the normal business debts and agreed to and did secure the cancellation of the $400,000 note. The petitioner paid for such extinguishment of its debts the sum of $235,000, representing the fair market value of its entire assets. For a full discussion of the law in cases of comparable facts see *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner*, 70 Fed. (2d) 95; *Highland Farms Corporation*, 42 B. T. A. 1314; *Rufus S. Cole*, 42 B. T. A. 1110; *Springfield Industrial Building Co.*, 38 B. T. A. 1445; *Madison Railways Co.*, 36 B. T. A. 1106; *Lakeland Grocery Co.*, 36 B. T. A. 289.

The principles enunciated by these cases are these: Where an insolvent debtor turns over all or part of his property to his creditors in full or partial satisfaction of his debts, if the debtor remains insolvent he realizes no taxable gain. On the other hand, where an insolvent debtor, by reason of the transaction in question, becomes solvent he

realizes taxable gain in the amount of the assets freed from the claims of creditors, i. e., to the extent by which the transaction renders him solvent.

Here the petitioner, while formerly insolvent, emerged from the transaction with $14,610 in cash and no liabilities except to its stockholders. Therefore, it became solvent to the extent of that sum. Under the doctrine set forth in the *Lakeland Grocery Co.* case, *supra*, it was taxable on that sum. It made a proper return thereof. Petitioner owed no further tax on the transaction.

The second issue requires little discussion. The same principle which guided us in the decision of the first issue applies here. The bookkeeping entries transferring certain reserve accounts to surplus created no income taxable to the insolvent petitioner. They were made before the petitioner's assets were assigned to Russ. After the books were so changed the petitioner was still insolvent. Thus no asset, potentially or actually, was freed for the petitioner's use. The closing out of the credit balances in such reserve accounts to surplus in 1940 did not result in taxable income.

*Decision will be entered under Rule 50.*