## COMMISSIONER OF INTERNAL REVENUE v. CAPENTO SECURITIES CORPORATION et al.

### No. 3897.

Circuit Court of Appeals, First Circuit.

Jan. 31, 1944.

Bernard Chertcoff, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Samuel H. Levy, Sp. Assts. to Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for petitioner for review.

Edward C. Thayer, of Boston, Mass., for Capento Securities Corporation et al.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This case involves the income and excess profits tax liability of the Capento Securities Corporation and of the Raytheon Production Corporation for the fiscal year ending May 31, 1936. The Commissioner ruled that Capento Securities Corporation had derived a taxable gain of $34,840 from an exchange of bonds for stock during the taxable year, and that Raytheon Production Corporation had derived a taxable gain of $450,000 from the same exchange, and accordingly determined the deficiencies in controversy. The Board of Tax Appeals disagreed with the Commissioner and decided that there was no deficiency in the case of either corporation. In each case the Commissioner filed a petition for review in this court and by our order the cases were consolidated for docketing, argument and decision.

At the outset of the taxable year the two respondent corporations were wholly-owned subsidiaries of the Raytheon Manufacturing Company.

Respondent Raytheon Production Corporation in 1929 issued secured gold bonds of $500,000 face value maturing serially in each of the years 1940 to 1944, inclusive. Presumably the bonds were issued for cash at par. The company's capital stock consisted of 1,000 shares of common with a par value of $100 per share, all owned by the Raytheon Manufacturing Company.

In 1933 respondent Capento Securities Corporation was organized, with a capital stock represented by 10 shares of common, par value $100 per share, all owned by Raytheon Manufacturing Company. Capento proceeded to purchase, at a cost of $15,160, the whole of the aforesaid issue of $500,000 of bonds of the Raytheon Production Corporation. These bonds were Capento's only asset, and so far as appears, Capento was organized for the sole purpose of acquiring them. If Raytheon Production Corporation had directly bought in its own bonds at a cost less than their face value it would have made a taxable gain in 1933 under the doctrine of United States v. Kirby Lumber Co., 1931, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131.[1]

In 1934 Raytheon Production Corpora-

---

[1] Query, what would have been the amount of the taxable gain in that case? If half a million dollars of Raytheon Production Corporation's secured bonds were worth only $15,160 in 1933, the corporation must have been deeply insolvent. In Texas Gas Distributing Co. v. Commissioner, 3 T.C. 57, 61, decided January 18, 1944, the Tax Court states the rule as follows: "Where an insol-

tion applied to the First National Bank of Boston for a loan of $200,000 for the purpose of obtaining additional working capital. The loan was made upon the condition that the $500,000 of bonds held by Capento should be subordinated to the loan, and they were so subordinated under an agreement in usual form, to which Capento was a party, executed September 21, 1934.

Raytheon Production Corporation in the spring of 1935 applied to the First National Bank of Boston and to the Federal Reserve Bank of Boston for an additional loan of $100,000. At the outset of the negotiations, it was apparently the understanding of the parties that the $500,000 of bonds would also be subordinated to this second loan. However, on May 27, 1935, the First National Bank wrote to the Raytheon Production Corporation, in part, as follows:

"It has occurred to us that it would be far simpler and more desirable from the standpoint of the holder of the company's notes that these bonds be replaced by an additional stock interest which would be clearly subordinate to our position. We do not know as this would make any vital difference so far as you are concerned, but I think we would feel somewhat more comfortable with this form of obligation.

"I shall appreciate it if you will consider this matter and develop a plan in accordance with the above suggestion if possible."

In pursuance of this suggestion a plan of reorganization was adopted by the three affiliated corporations on May 28, 1935. The plan provided that, by appropriate charter amendment, the capital stock of Raytheon Production Corporation should be increased by 5,000 shares of 6% noncumulative preferred stock, par value $100 per share, such preferred shares to have full voting power with the common shares, share for share. Capento was to transfer the $500,000 of bonds to the Raytheon Production Corporation for cancellation and retirement solely in exchange for the whole of the new issue of 5,000 shares of the latter's preferred stock. The existing liability of Raytheon Production Corporation with respect to said bonds was to be transferred to capital stock account in payment of said preferred stock. This plan of recapitalization was carried into execution, and on October 24, 1935, the two banks made the additional loan of $100,000 to Raytheon Production Corporation, the parent company guaranteeing the loan.

The Board found as a fact, and this is not disputed, that the preferred stock which Capento received during the taxable year in exchange for the bonds was actually worth $50,000 at date of acquisition. Since Capento had acquired these bonds in 1933 at a cost of $15,160, Capento admittedly made a gain during the taxable year of $34,840 as a result of the exchange.

Capento contended, however, and the Board so ruled, that the substitution by Raytheon Production Corporation of preferred shares for bonds was a recapitalization, which, under § 112(g) (1) (D) of the Revenue Act of 1934, 48 Stat. 680, 26 U.S. C.A. Int.Rev.Acts, page 695, was a "reorganization", as defined, and that since Capento exchanged the bonds of Raytheon Production Corporation, a party to the reorganization, solely for preferred stock in the same corporation, the resulting gain may not be recognized, as provided in § 112(b) (3).[2]

---

vent debtor turns over all or part of his property to his creditors in full or partial satisfaction of his debts, if the debtor remains insolvent he realizes no taxable gain. On the other hand, where an insolvent debtor, by reason of the transaction in question, becomes solvent he realizes taxable gain in the amount of the assets freed from the claims of creditors, i. e., to the extent by which the transaction renders him solvent."

[2] "Sec. 112. Recognition of Gain or Loss.

"(a) General Rule.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges Solely in Kind.—

*     *     *     *     *

"(3) Stock for Stock on Reorganization.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) Same—Gain of Corporation.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

"(5) Transfer to Corporation Con-

We agree with this conclusion of the Board. There is no doubt that the exchange falls literally within § 112(b) (3). The Commissioner, however, invokes the authority of Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. There the purported "reorganization", though following the literal language of the statutory definition, was an operation having no business or corporate purpose. The plan was not to reorganize the business or any part of the business but to accomplish the transfer of certain corporate assets to the stockholders, a transfer which, if done directly, would have rendered the distribution taxable to the stockholders as dividends. The evanescent new corporation did no business except to serve as the roundabout channel for this distribution and was immediately thereafter dissolved. In substance, assets of the original corporation were distributed to its shareholders and the corporation's surplus was correspondingly reduced. Under these special circumstances the court regarded the reorganization as a mere sham and held that the distribution was taxable to the stockholders as a dividend. In the case at bar the reorganization was not resorted to in order to evade an impending tax liability. Capento could have held onto the bonds indefinitely without being subjected to a tax. The reorganization was an ordinary business transaction, entered into at the suggestion of the banks, who were unwilling otherwise to make the proposed loan to Raytheon Production Corporation. The bonds were hopelessly in default, and Capento as the owner of all the bonds was, in the equity sense, the owner of Raytheon Production Corporation. There resulted a permanent revision of the capital structure of Raytheon Production Corporation pursuant to a plan of recapitalization—a normal business procedure dictated by the necessity of raising new capital. In such circumstances it is the purpose of the non-recognition provisions of the Act to save the taxpayer from an immediate recognition of a gain, where, in a popular and economic sense, there has been a mere change in the form of ownership and the taxpayer has not really "cashed in" on the theoretical gain, though a gain may have accrued in a constitutional sense. As the Board pointed out [47 B.T.A. 694], Capento, having become a preferred shareholder, "has subjected its investment to the risks of the business instead of having, as a bondholder, a fixed obligation." We are clear that the doctrine of the Gregory case is inapplicable to the situation here presented. See Helvering v. Minnesota Tea Co., 1935, 296 U.S. 378, 385, 56 S.Ct. 269, 80 L.Ed. 284; Bass v. Commissioner, 1 Cir., 1942, 129 F.2d 300, 309; Mertens, Law of Federal Income Taxation (1939 Supp.) § 17.48.

We turn now to the case of respondent Raytheon Production Corporation. The Commissioner ruled that when this company during the taxable year received back and cancelled its bonds of a face value of $500,000 in exchange for the issuance of its preferred stock worth only $50,000, it realized a taxable gain of $450,000. In overruling the Commissioner the Board placed its decision on two grounds.

trolled by Transferor.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

\* \* \* \* \*

"(g) Definition of Reorganization.— As used in this section and section 113—

"(1) The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another." 48 Stat. 704, 705, 26 U.S. C.A. Int.Rev.Acts, pp. 692, 695.

First, it said: "Production issued its preferred shares solely in exchange for its bonds, and section 112(b) (3) describes this situation and provides that no gain or loss shall be recognized." The Commissioner contends that the transaction does not fall even within the literal language of § 112(b) (3); that the legislative history of this subsection makes it plain that it is applicable only to gain or loss realized by a security holder, and not to gain or loss realized by the corporation "a party to a reorganization". We do not find it necessary to examine the correctness of this contention.

The second ground taken by the Board was as follows:

"But, leaving aside for the moment the statutory provision, it is hard to see that gain was in fact realized. The corporation had a liability of $500,000 on the bonds, having presumably borrowed that amount. While it discharged that liability, it created a new stock interest which became a balance sheet liability called capital stock. This is plainly different from the discharge of its indebtedness by the payment of money in a less amount than the indebtedness, as in Kirby Lumber Co. v. United States, 284 U.S. 1 [52 S.Ct. 4, 76 L.Ed. 131], and the cases which have followed it. To substitute a capital stock liability for a bonded indebtedness may have its advantages, as this case illustrates, but it cannot be called a present realization of gain. * * * Even though the shares issued are, for a reason not explained by the evidence, worth only $50,000, the amount whereby the par value exceeds the present value is not a gain, for it is the par value which measures the capital stock liability. Gain is not realized by a corporation in the receipt of the subscription price of its shares, Regulations 86, article 22(a)-16,[3] and this would seem to be no less true when the subscription price, instead of being newly paid, is the amount which has already been paid in as the principal of a bond loan. While the bond loan has been terminated, the amount borrowed is now committed to capital stock liability instead of to the liability of a fixed indebtedness."

We think that the Board was at liberty to find that Raytheon Production Corporation realized no gain on the exchange. This would seem to be "only a question of proper tax accounting" in which the decision of the Board is controlling on the courts, there being no provision of statute or regulation specifically requiring a contrary holding. Dobson v. Commissioner, December 20, 1943, 64 S.Ct. 239, 249.

■ However that may be, the Board's reasoning seems to us persuasive and its conclusion right.

■ If the bonds had been acquired at a discount in 1933 by an outside purchaser, not affiliated with the Raytheon group, we do not understand that the Commissioner would have contended that the subsequent exchange in 1935 of preferred stock for the bonds pursuant to the plan of reorganization would have resulted in the realization of a taxable gain to the Raytheon Production Corporation. What rankles with the Commissioner is the fact that Capento was a dummy corporation organized by the parent company in 1933 to acquire the bonds at a bargain price, when if the issuing corporation had itself bought in the bonds at a discount it would have realized a taxable gain.[4] Whether the principle of the Kirby Lumber case could

---

[3] This regulation, cited by the Board, reads as follows:

"Acquisition or disposition by a corporation of its own capital stock.—Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

"But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Act."

[4] But see footnote 1, supra.

be extended to nullify this tax-avoiding device we do not have to decide in the present case. Treating the affiliated Raytheon group as a single business entity, the Commissioner states in his brief: "The Raytheon group of corporations issued $500,-000 of bonds in 1929 and discharged that indebtedness by paying only a small fraction of the debt. In accordance with well settled principles the resulting gain should be taxed as income." But if the Raytheon group is thus to be regarded as a single entity, it is evident that the asserted gain to the group was realized in 1933 when the group acquired the bonds from outsiders at a discount. The statute of limitations has run on the collection of any deficiency for that year, and the Commissioner may not indirectly accomplish such collection by distorting the income for the present taxable year.

The decisions of the Board of Tax Appeals are affirmed.