**BETHLEHEM STEEL CORPORATION**

v.

**The UNITED STATES.**

**No. 309–65.**

United States Court of Claims.

Dec. 11, 1970.

George G. Tyler, New York City, attorney of record, for plaintiff; Richard J. Hiegel, New York City, of counsel.

Norman J. Hoffman, Jr., Washington, D.C., on the original argument and Philip R. Miller, Washington D.C., on the reargument, with whom was Assistant Atty. Gen. Johnnie M. Walters, for defendant; Joseph Kovner, Washington, D.C. of counsel.

Before LARAMORE, Acting Chief Judge, JONES, Senior Judge, and DURFEE, DAVIS, SKELTON, and NICHOLS, Judges.

OPINION

DAVIS, Judge.

In this income tax refund suit for 1956, the litigants have stipulated the facts, and the issue is purely one of law. In 1955 taxpayer Bethlehem Steel Corporation issued for public distribution $191,659,000 of its 3¼% twenty-five year debentures, due May 1, 1980, on which interest was payable semi-annually on May 1 and November 1. Under the terms of the indenture (dated May 1, 1955), the debentures were convertible into Bethlehem's common stock, at the holder's option, at any time up to and including May 1, 1965 (unless sooner called for redemption). The conversion price increased over the conversion period. In 1956 it was to be $140 for each share. This price was payable only by surrender of $100 principal amount of debentures as well as any unmatured interest coupons, plus payment of $40 in

cash. The indenture provided that on conversion:

> No adjustment shall be made for interest accrued on any Debenture that shall be converted or for dividends on any Common Stock that shall be issuable upon the conversion of such Debenture.

During 1956, debentures in the aggregate principal amount of $50,833,500 were converted. On these change-overs, the interest accruing between the last preceding interest payment date (May 1 or November 1) and the date of conversion totaled $76,370. Of this, $7,182 accrued in November and December 1955 (on debentures converted between January 1, and May 1, 1956), and taxpayer was allowed to deduct that sum (as interest paid) on its tax return for 1955. The balance of the interest ($69,188) was accruable in 1956. On audit of the 1956 return, the Internal Revenue Service disallowed a deduction for this $69,-188 of interest, and also restored to taxpayers 1956 income the sum of $7,182 (representing the interest accrued and deducted in 1955 on debentures converted in 1956 before May 1st). However, the Service did allow taxpayer to deduct the interest paid on May 1 and November 1, 1956, as well as the interest accruing during November and December 1956 on debentures not converted on or before December 31, 1956. Taxpayer paid the deficiency ($39,712) and interest ($18,664.64), and filed a timely claim for refund. After denial, this suit was brought.

Section 163(a) of the Internal Revenue Code (1954) provides: "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." Plaintiff is an accrual-basis taxpayer. Both sides agree that if the accrued interest-obligation in question was obliterated and the interest not paid, plaintiff cannot have these interest deductions it claims for 1956. The difference between the parties is whether the interest (accrued by taxpayer prior to the conversion dates) was in fact paid by Bethlehem, as it contends, and hence deductible, or rather was forgiven by the debenture holders, cancelled by taxpayer, or otherwise lost to the holders on conversion, as the defendant urges, and therefore not deductible.

The gist of taxpayer's position is that "[p]rior to conversion, the Debenture holder has two contractual rights—the right to receive the principal of the Debentures and the right to receive accrued interest. After conversion, the holder has stock and no contractual rights. Obviously, both the right to principal and the right to accrued interest were relinquished in exchange for the stock. In other words, both the principal and the accrued interest were 'paid' by the delivery of the stock." In support of this interpretation, plaintiff marshals several arguments. It points, first, to cases in which stock exchanged for bonds has been held to cover both principal and accrued interest although nothing explicit was said about the latter (Hummel-Ross Fibre Corp., 40 B.T.A. 821 (1939); Shamrock Oil & Gas Co., 42 B.T.A. 1016 (1940); Central Electric & Telephone Co., 47 B.T.A. 434 (1942)). It also finds comfort in the fact that the market value of Bethlehem's common which was received by the debenture-holders on conversion in 1956 was at all times greater than the principal amount of the converted debentures plus the $40 cash payment plus the accrued interest. In this connection, taxpayer considers it "naive" and "contrary to economic reality" to assume that the debenture-holder would ignore his property right to the accrued interest on conversion and be willing to forget or forgive that asset. Taxpayer draws, too, an analogy to original issue discount on convertible bonds which the Treasury has allowed to be amortized and deducted up to the time of conversion (G.C.M. 9674, X-2 Cum.Bull. 354 (1931); I.T. 2347, VI-1 C.B. 86 (1927)). The "no adjustment" clause in the indenture, *supra*, Bethlehem reads simply as an unnecessary caution that the conversion exchange was to be on a "flat"

basis, *i. e.* the stock to be received by the debenture-owner was in consideration of the debenture itself as well as all unmatured·interest coupons (including the accrued interest involved here) plus the $40 in cash.

The trouble with these points (and the others plaintiff makes) is that, even after one has considered all the factors *pro* and *con,* the issue is left too much in doubt. The countervailing contentions are very substantial. The prior decisions [1] differ significantly in that, in each of those cases, the arrangement to exchange the stocks for bonds plus accrued interest was struck, as part of a reorganization, in the form of a contemporaneous trade or bargain in which the circumstances and values were then known and calculable; the contracting parties knew the actual facts and values at the time they entered into the arrangement and they made their bargain on that basis. Here, on the other hand, the terms of the conversion were fixed in advance on issuance of the debentures in 1955, and the parties could not then predict what all the facts and values would be in 1956 or the ensuing years; conversely, since the terms were all prefixed, there could not have been a mutual *ad hoc* evaluation and trade-off of relevant elements at the time of the conversion-exchange in 1956, as there was in the *Hummel-Ross* line of cases. Moreover, that series of decisions must be contrasted with Capento Securities Corp., 47 B.T.A. 691 (1942), aff'd on other grounds, 140 F.2d 382 (C.A. 1, 1944), in which the Tax Court, without much explanation, disallowed the deduction for accrued interest on bonds exchanged for stock on the ground that the interest was impliedly "canceled" and the stock exchanged solely for the principal amount of the debt-obligation. The combination of *Hummel-Ross* with *Capento* suggests that, in each instance, all

the circumstances of the transaction must be appraised to determine whether the particular bargain included the payment or the obliteration of the accrued interest.

In response to Bethlehem's singling out of that fact that the market value of the stock was at all times (in 1956) enough to cover the accrued interest (in addition to the debenture-principal and the $40 cash payment), the defendant stresses that the conversion price was precisely the same the day before an interest date (May 1st and November 1st) as it was the day after the preceding interest day, six months earlier. The Government emphasizes, too, certain aspects of the stock's fluctuation during 1956. First, at some points the value of the stock was such that plaintiff received much more than it paid out and therefore (in defendant's eyes) would not have incurred any costs for accrued but unpaid interest.[2] Second, there was no consistent pattern of accommodation between the value of the debentures and the value of the stock—the value of the debentures plus $40 often departed markedly from the then value of the stock—and this is seen as proof that outside and unrelated factors were the strongest influence on the course of the stock-value changes. Third, and perhaps most important, there was no correlation between the passage of time since the last interest date and the price of the stock on the market; prices immediately prior to an interest date were sometimes lower than in the preceding months. The defendant's over-all hypothesis is that debenture holders were influenced by the possibility of receiving a dividend on the stock (usually $2 per quarter), rather than by the markedly lesser amount of the proportional accrued interest—or were moved by the prospect of obtaining both the quarterly dividend and the actual interest payment on May

---

1. Hummel-Ross Fibre Corp., Shamrock Oil & Gas Co., Central Electric & Telephone Co., supra.

2. *E. g.*, in May 1956, the low value of the stock was $142.375, while the low value

for the debentures during that month was $116.18. Under these figures, on conversion in that month, taxpayer received debentures, interest coupons, and cash totaling $156.45 for stock worth $142.375.

1st or November 1st. (The last half of the "no adjustment" clause, *supra,* made it clear that a debenture holder who converted in time to become a shareholder on the record date would be entitled to the entire quarterly dividend.[3])

As for the terms of the "no adjustment" clause, the Government argues that the clause was not mere surplusage but was obviously included to make clear that the conversion price was fixed and to differentiate the terms of this conversion from other convertible bonds, such as some issued by the American Telephone and Telegraph Company under which proportional interest was paid. If it were not for this clause, Bethlehem would probably have been subject to demands that it pay accrued interest, and might well have been entangled in litigation with its debenture-holders.[4]

We recite these adverse positions not to decide or demonstrate that they outweigh plaintiff's arguments and would in themselves necessarily lead us to place the laurel wreath on the brow of the Commissioner of Internal Revenue, but rather to show that, if plaintiff has substantial grounds for its stance, so does the other side. We do not find the choice readily foreordained or easy to come by. The scales continue to sway from side to side and do not promptly come to rest.

In this closely-balanced situation one cannot forget that Bethlehem was itself the drafter and the master of the trust indenture and of the debenture form. If it had written something like, "On conversion, unpaid accrued interest on a debenture shall be deemed to be paid through receipt of the common stock exchanged for the debenture being converted", then it seems plain that the rule of Hummel-Ross Fibre Corps., 40 B.T.A. 821 (1939), *supra,* and Shamrock Oil & Gas Co., 42 B.T.A. 1016 (1940), *supra,* would apply. That language would control the bargain struck—the accrued interest would be considered to have been paid on the conversion, and an interest deduction authorized. On the other hand, if the indenture had said, "On conversion, any unpaid accrued interest on any debenture being converted shall be cancelled, forfeited, and not paid", then the principle of Capento Securities Corp., 47 B.T.A. 691 (1942), *supra,* would govern, and no interest deduction would be allowed. See I.T. 2884, XIV–1 Cum.Bull. 151 (1935); Rev.Rul. 68–170, 1968–1 Cum.Bull. 71. Instead of using either of these unmistakable alternatives, Bethlehem put into the indenture the imprecise and unclear language: *"No adjustment shall be made for interest accrued on any Debenture that shall be converted * * *"* (emphasis added). The fuzzy words, "no adjustment shall be made", are subject to either of the two polar interpretations for which the parties have been battling. The wording can, in reason, be read both ways, and a good argument can be made for each.

The preferable solution is to charge this ambiguity against Bethlehem, as the one responsible for the wording of the clause and the indenture. This is a principle well-known to the law of contracts, particularly to government-drafted agreements. See United States v. Seckinger, 397 U.S. 203, 216, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); Sturm v. United States, 421 F.2d 723, 727, 190 Ct.Cl. 691, 696 (1970). There is no sound reason why it should not be applied here against the debenture-issuer which is seeking the tax privilege of a deduction on the basis of the indenture and bond that that issuer framed and drew up.

The "ambiguity principle" has a special pertinence in these circumstances

---

3. "No adjustment shall be made * * * for dividends on any Common Stock that shall be issuable upon the conversion of such Debenture."

4. The Government seeks to distinguish original issue discount on several grounds it is unnecessary to set forth. It suffices, for our purposes, that these distinctions are not frivolous and that the defendant's arguments are substantial.

because of the effect of the indenture clause on the tax status of the converting bondholders, who, of course, had to accept the terms of the indenture as it was, being powerless to bargain over that aspect. On either reading of the clause, the bondholders would receive exactly the same consideration on the exchange—either in the form of a payment on the principal amount of the bond without any interest, or in the form of a lesser payment for principal plus something for accrued interest—but in the latter case they could be subject to an income tax (thus effectively reducing the consideration received). Bethlehem could, and should, have made it clear to its bondholders, in the indenture and bond, whether or not they would be expected, on conversion, to pay income tax on the accrued interest. If the interest was cancelled, Bethlehem would get no deduction but it would also be plain that the converting bondholders were free of the tax. If the accrued interest was being paid, Bethlehem would have its deduction but the converting bondholders could very well have to pay a tax.

The parties disagree on this point of the taxability of any interest received; Bethlehem says that no tax would be due from the bondholders while the Government insists that a tax would be payable. *Prima facie* the Government seems to have a strong case. The authorities on which Bethlehem relies (especially Commissioner of Internal Revenue v. Carman, 189 F.2d 363 (C.A.2, 1951)) deal with reorganizations pursuant to a plan of reorganization and may even be confined to a reorganization of an insolvent or bankrupt corporation (see Jaglom v. Commissioner of Internal Revenue, 303 F.2d 847 (C.A.2, 1962). Certainly, these cases did not involve bond-conversions such as occurred here. The long held position of the Internal Reve-nue Service appears to be that the exercise of such conversion rights does not lead to gain or loss, not because there is a reorganization (exempting the whole transaction from taxation), but because the matter is still open until the stock is sold. See Treas.Reg. 45 (1920 ed.), Article 1563; Mim. 3156, II–2 Cum.Bull. 24, 25 (1923); I.T. 2216, IV–2 Cum. Bull. 19 (1925); G.C.M. 18436, 1937–1 Cum.Bull. 101, 102; Rev.Rul. 57–535, 1957–2 Cum.Bull. 513, 516; Rev.Rul. 62–153, 1962–2 Cum.Bull. 186, 187; Fleisher and Cary, The Taxation of Convertible Bonds and Stock, 74 Harv.L. Rev. 473, 477–78, 482 (1961). And it is significant that there has been no holding that the receipt of accrued interest as an incident of conversion is not taxable gain at the time.

We do not, however, decide this issue. It is enough that the question is close and that there is a distinct and substantial possibility that the bondholders would be taxed if Bethlehem were held to have paid accrued interest. Whatever the correct rule eventually turns out to be, Bethlehem, which could and should have clarified the matter, should bear the risk of its own ambiguity. Cf. Singer-General Precision, Inc. v. United States, 192 Ct.Cl. 435, 447–448, 427 F.2d 1187, 1193 (June 1970). If the indenture clause is read as cancelling the interest, there will be no such possibility of a tax being imposed on the converting bondholders. With the other factors being so nearly in balance, that is the interpretation we adopt. It is not unjust to Bethlehem which, if it wished to deduct the interest, should have warned its bondholders of the tax possibilities awaiting them by much sharper language than the bland and uncertain phrase it used in this indenture.

The plaintiff is not entitled to recover and its petition is dismissed.