CAPENTO SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RAYTHEON PRODUCTION CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 105246, 108295. Promulgated September 22, 1942.

*Edward C. Thayer, Esq.,* and *Loring P. Jordan, Jr., Esq.,* for the petitioners.

*J. T. Haslam, Esq.,* for the respondent.

**OPINION.**

KERN: (1) Capento had acquired the entire issue of Production bonds for $15,160.[1] It was not a shareholder of Production, all of the shares being held by the Manufacturing Co. Capento's only asset was the Production bonds. In the taxable year, pursuant to a plan, Production issued and Capento received 5,000 new preferred shares, worth $50,000, in exchange for the outstanding bonds. The Commissioner determined that by this exchange Capento realized gain of $34,840 which must be recognized. Capento contends that the substitution by Production of preferred shares for bonds was a recapitalization, which, under the Revenue Act of 1934, section 112 (g) (1) (D), was a reorganization, and that, since the bonds were exchanged

---

[1] The evidence does not show from whom the bonds were purchased.

by it solely for stock, no gain may be recognized, citing section 112 (b) (3) or (4).

We see no escape from Capento's position. The substitution of shares for bonds and the cancellation of the latter was a recapitalization, *Burnham* v. *Commissioner*, 86 Fed. (2d) 776; certiorari denied, 300 U. S. 683; *Sigmund Neustadt Trust*, 43 B. T. A. 848 (on review C. C. A., 2d Cir.); *Hummel-Ross Fibre Corporation*, 40 B. T. A. 821, and Capento's exchange of its entire property, consisting of the bonds, was an exchange by it of property or securities solely for stock in a corporation party to the reorganization pursuant to the plan of reorganization.

Respondent's argument to the contrary is based largely upon the general premise that such a reorganization is a tax-avoiding device and therefore suspect. But we are unable to find that the procedure adopted was without justifiable business foundation, cf. *Gregory* v. *Helvering*, 293 U. S. 465. The bonds had, so far as the record shows, been issued *bona fide*, in 1929; Capento had held them during the two years of its existence. Capento is still in existence as Production's preferred shareholder. It is, of course, true that the two corporations are closely related, directly and through the Manufacturing Co., which owns the shares of each; but that does not necessarily color their transactions and prevent normal tax consideration. Capento invested $15,160 in Production Corporation's bonds, and by a change in the form of its investment it now holds Production's preferred shares instead of the bonds. As a shareholder, it has subjected its investment to the risks of the business instead of having, as a bondholder, a fixed obligation; and this was for the purpose, in the interest of the Production Corporation, of further subordinating its own position to that of other lenders. It is hard to see an actual realization of gain which is escaping tax by a factitious device, like that attempted in the *Gregory* case. There was no doubt an effort to avoid a course which would invite a tax, but this alone is no occasion for disregarding the clear terms of the statute. If the exchange had been a conversion by the Production Corporation into preferred shares pursuant to a provision of the bonds, no gain would have resulted to Capento, the bondholder, who perforce would have made the substitution, par for par, of shares of greater value than the cost to it of the bonds.

In Docket No. 105246, the determination is reversed.

(2) The Production Corporation in 1929 issued $500,000 of bonds (the consideration does not appear in evidence, so it may be assumed that they were issued for cash at par). In 1933 Capento bought these bonds from the holder at a cost of $15,160, and retained them as its only asset. Before the taxable year, Production needed working capital, and borrowed $200,000 from a bank upon Capento's agreement that the obligation of the bonds was subordinated to the new loan. In the taxable year Production needed more working capital and

sought to borrow $100,000. It was suggested that Production and Manufacturing, its sole shareholder, consolidate. This suggestion, however, was not adopted, and, instead of expressly subordinating the bonds to the new borrow, the same result as that of subordination was accomplished by substituting preferred shares for the bonds and canceling the bonds. In July 1935 the new preferred was issued in its entirety of $500,000 par value to Capento and the entire issue of bonds was surrendered by Capento and canceled. The preferred shares were worth $50,000. The new borrow was procured in October.

The petitioners argue that under the reorganization sections no gain or loss is realized, and also that no gain or loss is realized by a corporation in the receipt of the subscription price for the original issuance of its shares, citing Regulations 86, article 22 (a)–16. The Commissioner argues that Production realized gain of $450,000 in discharging its bonded indebtedness of $500,000 for its shares worth only $50,000, since under the circumstances the reorganization sections are not permitted to apply.

As we have said, there is no showing in this evidence of circumstances precluding the application of the reorganization sections. Production issued its preferred shares solely in exchange for its bonds, and section 112 (b) (3) describes this situation and provides that no gain or loss shall be recognized. But, leaving aside for the moment the statutory provision, it is hard to see that gain was in fact realized. The corporation had a liability of $500,000 on the bonds, having presumably borrowed that amount. While it discharged that liability, it created a new stock interest which became a balance sheet liability called capital stock. This is plainly different from the discharge of its indebtedness by the payment of money in a less amount than the indebtedness, as in *Kirby Lumber Co.* v. *United States*, 284 U. S. 1, and the cases which have followed it. To substitute a capital stock liability for a bonded indebtedness may have its advantages, as this case illustrates, but it can not be called a present realization of gain. The assets are not thereby freed from obligation. They become the subscription price contributed by the shareholder. Even though the shares issued are, for a reason not explained by the evidence, worth only $50,000, the amount whereby the par value exceeds the present value is not a gain, for it is the par value which measures the capital stock liability. Gain is not realized by a corporation in the receipt of the subscription price of its shares, Regulations 86, article 22 (a)–16, and this would seem to be no less true when the subscription price, instead of being newly paid, is the amount which has already been paid in as the principal of a bond loan. While the bond loan has been terminated, the amount borrowed is now committed to capital stock liability instead of to the liability of a fixed indebtedness.

The determination that the Production Corporation realized gain of $450,000 is reversed.

3. When the preferred was issued for the outstanding bonds, unpaid interest on the bonds had accumulated to the amount of $33,750. This had been deducted by Production when it accrued. It was not paid, and in petitioners' brief it is said the bondholder's "claim to accrued interest disappeared." The Commissioner, in the notice of deficiency, said "this interest item was canceled," and included the amount in Production Corporation's income, citing Regulations 86, article 22 (a)–149. Petitioners argue that the cancelation of the right to interest was a consideration for the preferred shares and not a forgiveness of indebtedness; and that, if it was a forgiveness, it was a gift.

We see nothing in the evidence to support the petitioners' conception, either as consideration for the preferred shares or as a gift. The shares were issued as the consideration for the retirement of the bonds in the same amount, and nothing was said about the interest. The unpaid interest was not an item of the recapitalization plan, cf. *Skenandoa Rayon Corporation* v. *Commissioner*, 122 Fed. (2d) 268; certiorari denied, 314 U. S. 696; *South Atlantic Steamship Line*, 42 B. T. A. 705. The cancelation of the interest is not explained in the evidence. The fact of cancelation is all that appears. By the cancelation assets were freed of the burden of the interest debt, and there was no corresponding obligation in the preferred shares, for they were issued at a par value only equal to the principal of the bonds. Nor is there evidence tending to show that the cancelation was gratuitous or intended as a gift.

The determination that the $33,750 was Production Corporation's income is sustained.

4. Respondent, by amended answer filed many months after the issuance of the deficiency notices and about the time notices of hearing were mailed, asserts penalties under section 291 of the Revenue Act of 1934, as amended by section 406 of the Revenue Act of 1935, on account of the alleged failure of petitioners to file returns within the time prescribed by law.

The returns were due on August 15, 1936, which was a Saturday. They were prepared and ready for filing on August 14. They were mailed to the collector of internal revenue at Boston. Petitioners' offices were in Newton which is within the area commonly known as "Greater Boston." The returns as introduced in evidence bear the file stamp of the collector with the date of August 17, 1936. This may be considered as some evidence that they were filed on that date. However, if petitioners' failure to file the returns within the time prescribed by law was due to reasonable cause and not to willful

neglect, the penalty will not be imposed. Whether the failure in this case to file timely returns was due to reasonable cause is therefore the issue here to be decided.

Respondent's regulation (Regulations 86, art. 53–4) provides that if a return is made and placed in the mails, properly addressed and postage paid, in ample time to reach the office of the collector in due course on or before the due date, no penalty will attach even though the return is not actually received by the collector until after the due date. It further provides that, if there is any question as to whether a return was posted in ample time to reach the collector's office by the due date, "the envelope in which the return was transmitted will be preserved by the collector and forwarded to the Commissioner with the return."

This regulation assumes, and in our opinion rightfully so, that if taxpayers mail returns to the collector, "properly addressed and postage paid," in time for them to arrive at the collector's office according to the period usually required for the transmission and delivery of mail, then the failure of the returns to arrive at the collector's office within the time allowed by law is not due to the willful neglect of the taxpayers, but, so far as they are concerned, is due to reasonable cause. The regulation also correctly assumes that, if there is any question concerning the time at which the returns were mailed, then the envelopes in which they were mailed would constitute the best evidence.

In order to show in the instant case that the failure to file timely returns was due to reasonable cause, petitioners could offer proof that the returns had been timely "placed in the mails, properly addressed and postage paid," either through the oral testimony of the corporate officer charged with the filing of the returns or through the documentary evidence of the envelopes in which they were mailed. The corporate officer in charge of their filing died before the date of hearing (and before the filing of respondent's amended answer). Petitioners were therefore confined in their proof on this issue to the envelopes which would have definitely proved the time when the returns were mailed to the collector and which, in all cases involving a question of whether a return was posted in ample time to reach the collector's office by the due date, should have been "preserved by the collector and forwarded to the Commissioner with the return."

Three days before the hearing herein petitioners' counsel served on respondent's counsel a notice to produce these envelopes. This notice was in writing and was in confirmation of an oral request to the same effect made several weeks before. At the hearing respondent's counsel was asked whether he had the envelopes specified in the notice to

produce. He answered, "I have not. I have been unable to produce them." His sole explanation was: "It might be that the Commissioner had no doubt about the situation and there was no necessity for keeping the records."

When a party fails to produce documentary evidence pursuant to a notice to produce and no satisfactory explanation for such failure is given, an inference may properly be recognized that the evidence would be unfavorable to the party failing to produce it. Jones on Evidence, 3d Ed. §§ 19, 20 and cases cited. We can think of no situation which more clearly demands the application of this rule than that presented in the instant case, where the respondent has raised an issue involving the imposition of a penalty at a time in the proceeding when he has had in his possession the only evidence which can give a definite answer to the issue which he has raised, which by his own regulation he should have preserved in the event of any such question, and which he failed to produce pursuant to proper notice.

From the facts shown, the explanation given by respondent's counsel for his failure to produce the envelopes at the hearing, and the failure to impose the penalties in question at the time the deficiencies were determined, we can draw the logical inference that at the time when the returns were received for filing and at the later time when the deficiencies were determined, the collector and the Commissioner were satisfied that no penalty would attach because of the late filing of the return, and we may ascribe this satisfaction on their part to the fact that the returns were mailed at a time which brought the matter within the purview of respondent's own regulation which we have quoted. This is the logical explanation for the inability of respondent's counsel to produce the envelopes, for if the collector and the Commissioner were satisfied that no penalty should attach, there would be no reason for the preservation of the envelopes. We feel confident that if the envelopes had been preserved they would have been produced at the hearing. We conclude that they were not preserved and from that fact we draw the foregoing inference.

Having considered all of the evidence on this issue, and the inferences above referred to, we conclude that the failure of petitioners to file the returns in question within the time prescribed by law was due to reasonable cause and not due to willful neglect, and that no penalty should be imposed against petitioners pursuant to the statute.

We have considered this issue without deciding whether, in cases in which respondent alleges in an affirmative answer the failure of petitioner to file a timely return and therefore asks the imposition of a penalty, the burden is on respondent to prove that the failure to file such a timely return is due to willful neglect and not to reasonable

.cause. If the respondent has such a burden of proof, then the result which we have already reached by another line of reasoning would be *a fortiori*.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, dissenting in part: I am in agreement with the decision as to each of the first three points upon the merits. But I can not find that the failure to file the returns on the fifteenth, as the statute required, was due to reasonable cause and not due to willful neglect. The statute expressly requires that the penalty shall be added except when it is shown that the failure to file was due to reasonable cause. The evidence shows that the return was not filed within the time required by law, but does not show the cause of the failure. I therefore see no escape from the 5 per centum addition to the tax.

MELLOTT and DISNEY agree with this dissent.