## COMMISSIONER OF INTERNAL REVENUE v. MOTOR MART TRUST.

### No. 4124.

Circuit Court of Appeals, First Circuit.

June 20, 1946.

Muriel S. Paul, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., of counsel), for the Commissioner.

Stanley R. Miller, of Boston, Mass., for taxpayer.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Respondent, Motor Mart Trust (hereinafter referred to as the taxpayer), is a Massachusetts trust taxable as a corporation under the provisions of the Internal Revenue Code. The Commissioner determined deficiencies in its income and excess profits taxes for the years 1939 and 1940. Such deficiencies resulted from the Commissioner's reduction of the taxpayer's claimed basis for depreciation on a certain building. Whether the Commissioner's ruling was correct depends upon the effect of §§ 268 and 270 of the Bankruptcy Act, as amended by the Chandler Act, 52 Stat. 904, 11 U.S.C.A. §§ 668, 670, in their application

to a reorganization of the taxpayer in a proceeding initiated under § 77B, 11 U.S.C. A. § 207.

Upon its organization in 1926, the taxpayer acquired a leasehold interest in land in Park Square, Boston. It issued 5000 Class B common shares for the leasehold interest, which it set up on its balance sheet at $500,000. A building was erected on the land at a cost of $2,046,469.35, financed by the sale of first mortgage bonds, second mortgage bonds, and preferred shares.

At the date of its completion, January 1, 1927, the building had an estimated life of 42.95 years. The taxpayer has from the outset made an amortization charge of $47,649.97, which was sufficient to reduce the cost basis to zero at the expiration of 42.95 years from January 1, 1927. In each year, including 1939 and 1940 (the tax years now in question), the taxpayer deducted from gross income as reported on its income tax returns the aforesaid charge of $47,649.97.

Early in 1937, the taxpayer was insolvent and interest payments on the mortgage bonds were in default. On April 1, 1937, the trustee under the indenture securing the first mortgage bonds served notice of an intention to foreclose.

On April 30, 1937, the taxpayer filed a petition for reorganization under § 77B in the District Court of the United States for the District of Massachusetts. At that time its outstanding liabilities were:

| | |
|---|---|
| First Mortgage Bonds | $1,193,500.00 |
| Interest on First Mortgage Bonds | 298,375.00 |
| Second Mortgage Bonds | 282,000.00 |
| Interest on Second Mortgage Bonds | 101,900.00 |
| Trustees' Compensation. Unpaid | 68,651.77 |
| Scrip Certificates (Int. on First Mtg. Bonds) | 60,750.00 |
| 8% Preferred Shares (Par Value $100) | 1,250 shares |
| Class B Common, no par value | 5,000 shares |

A substitute plan of reorganization was proposed by the debtor and presented to the court on September 30, 1937. The plan was confirmed by the court by order entered June 21, 1938, but the final decree in the reorganization proceeding was not entered until January 16, 1939.

The plan called for the retirement of all existing securities. The interest of the old shareholders was completely extinguished. New issues of 9,548 convertible preferred shares at a par value of $50 per share, and 6,437 common shares at a par value of $5 per share were provided for, to be distributed as follows:

| | | |
|---|---|---|
| To Holders of First Mtg. Bonds | | |
| 9,548 Shares Preferred at $50 | $477,400 | |
| 4,774 Shares Common at $5 | 23,870 | |
| | | $501,270 |
| To Holders of 2nd Mtg. Bonds | | |
| 1,410 Shares Common at $5 | | 7,050 |
| To Trustees under the bonds in satisfaction of their claims for compensation | | |
| 253 Shares Common at $5 | | 1,265 [1] |

Before the plan of reorganization was confirmed, the question naturally arose whether its consummation would result in the realization of taxable income to the debtor in reorganization under the principle of United States v. Kirby Lumber Co., 1931, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131. In this connection Article 22(a)-14 of Treasury Regulations 94 then in force read as follows:

Cancellation of indebtedness.—The cancellation of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his services. A taxpayer realizes income by the payment or purchase of his obligations at less than their face value. (See article 22(a)-18.) If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a con-

---

[1] $4,050 in cash was paid to the holders of the scrip certificates.

tribution to the capital of the corporation. Income is not realized by a taxpayer by virtue of the discharge of his indebtedness as the result of an adjudication in bankruptcy, or by virtue of a composition agreement among his creditors, if immediately thereafter the taxpayer's liabilities exceed the value of his assets.

On March 2, 1938, counsel for the trustees in reorganization forwarded to the Commissioner a copy of the pending plan and requested an opinion as to whether, upon its consummation, "any taxable gain or income will result to the debtor." By letter dated May 13, 1938, the Commissioner replied in part as follows:

"Under the facts presented, and as above outlined, it does not appear that there is involved in the plan any question of the cancellation of indebtedness. In each instance with the exception hereinafter noted[2] where an indebtedness of the corporation is involved and is being extinguished it is to be effected through an exchange and a payment of the indebtedness rather than through cancellation of the indebtedness, the consideration being the exchange of its new convertible preferred shares and common shares for its first and second mortgage bonds, and the accrued interest thereon. The same situation exists with respect to the satisfaction of the unpaid compensation due trustees which had accrued prior to January 1, 1933. The trustees accept the common stock in payment and discharge of their claim. It is, therefore, the opinion of this office that no taxable income will be realized by the taxpayer by reason of these transactions."

If we understand correctly the Commissioner's present position, he does not undertake to disavow this ruling made by his predecessor in 1938. In any event, the ruling was clearly correct. See Commissioner v. Capento Securities Corporation, 1 Cir., 1944, 140 F.2d 382. At the date

of the reorganization the equity of the old shareholders had vanished, and in substance the bondholders were the owners of the company. This situation was merely given formal recognition under the plan of reorganization whereby the interests of the old shareholders were extinguished and the bondholders changed their status to that of shareholders in the reorganized company. It would be economic nonsense to say that the taxpayer thereby made a present realization of taxable gain when the bonds were retired in the manner stated.[3]

After the date of the court order confirming the plan of reorganization, but before the date of the final order in the reorganization proceeding, the Chandler Act became effective. The text of §§ 268 and 270 of the Bankruptcy Act as thus amended is as follows:

"Sec. 268. Except as provided in section 270 of this Act, no income or profit, taxable under any law of the United States or of any State now in force or which may hereafter be enacted, shall, in respect to the adjustment of the indebtedness of a debtor in a proceeding under this chapter, be deemed to have accrued to or to have been realized by a debtor, by a trustee provided for in a plan under this chapter, or by a corporation organized or made use of for effectuating a plan under this chapter by reason of a modification in or cancellation in whole or in part of any of the indebtedness of the debtor in a proceeding under this chapter."

"Sec. 270. In determining the basis of property for any purposes of any law of the United States or of a State imposing a tax upon income, the basis of the debtor's property (other than money) or of such property (other than money) as is transferred to any person required to use the debtor's basis in whole or in part shall be decreased by an amount equal to the

---

[2] The exception to which the Commissioner referred related to the cash payment to the holders of the scrip certificates. The case at bar is not concerned with the tax consequences of this small detail of the reorganization plan.

[3] Cf. Helvering v. American Dental Co., 1943, 318 U.S. 322, 327, 63 S.Ct.

577, 580, 87 L.Ed. 785: "Possibly because it seems beyond the legislative purpose to exact income taxes for savings on debts, the courts have been astute to avoid taxing every balance sheet improvement brought about through a debt reduction."

amount by which the indebtedness of the debtor, not including accrued interest, unpaid and not resulting in a tax benefit on any income tax return, has been canceled or reduced in a proceeding under this chapter, *but the basis of any particular property shall not be decreased to an amount less than the fair market value of such property as of the date of entry of the order confirming the plan. Any determination of value in a proceeding under this chapter shall not be deemed a determination of fair market value for the purposes of this section.* The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe such regulations as he may deem necessary in order to reflect such decrease in basis for Federal income-tax purposes and otherwise carry into effect the purposes of this section."[4]

The Commissioner ruled that by virtue of § 270 the taxpayer was no longer entitled to use its original basis in computing the deductions for depreciation for each of the taxable years 1939 and 1940. Finding that the fair market value of the building on the date of reorganization was $404,719.54 and that its unexpired life as of that date was 30½ years, the Commissioner disallowed in part the claimed deduction for depreciation of $47,649.97 and allowed the same only in the reduced amount of $13,269.49 ($404,719.54 ÷ 30.5), saying:

"The reorganization under Section 77B of the Bankruptcy Act on June 21, 1938, is not deemed to have resulted in the creation of a new trust on that date. However, under the provisions of Section 270 of the Bankruptcy Act of 1938, as amended by the Act of June 22, 1938 (Public No. 696, 75th Congress) and the Act of July 1, 1940 (Public No. 699, 76th Congress, Third Session) the basis for the allowance of depreciation or amortization in connection with the building erected in 1926 on land leased by the trust is the fair market value of the building on June 21, 1938, the date of reorganization. * * *"

Upon petition for redetermination of the deficiencies found by the Commissioner, the Tax Court reversed the Commissioner and entered its decision that there were no deficiencies in the taxpayer's income and excess profits taxes for the years 1939 and 1940.

It seems to be the clear implication of Claridge Apartments Co. v. Commissioner, 1944, 323 U.S. 141, 65 S.Ct. 172, 89 L.Ed. 139, that by virtue of § 276, sub. c of the Bankruptcy Act, as amended, 52 Stat. 905, 11 U.S.C.A. § 676, sub. c, § 270 applies to a reorganization proceeding commenced under § 77B if such proceeding was still pending on the effective date of the Chandler Act; that is, if the final decree in the reorganization proceeding was not entered until after the effective date of the Chandler Act, even though the plan of reorganization may have been confirmed by court order entered prior to such date. For present purposes we shall so assume, though the precise point was not presented for decision in that case.

We refer to the Claridge case, supra, for an extensive review of the legislative history and purpose of §§ 268 and 270 of the Bankruptcy Act. Section 268 had no other object "than to free Chapter X reorganizations from the tax deterrents, including tax uncertainties, imposed by the existing revenue act provisions", thereby encouraging "the freer use of bankruptcy reorganization in order to avoid unnecessary or premature liquidations". 323 U.S. at page 149, 65 S.Ct. at page 178, 89 L.Ed. 139.

In its original form as considered by the House committee, the Chandler Act contained no counterpart of the present § 270. The text of § 270 was prepared and offered by the Treasury Department as an appropriate provision complementary to the tax boon afforded by § 268. The Assistant General Counsel of the Treasury explained to the House committee: "Moreover, we feel that if this remedial provision [§ 268] is written into the law, it should be connected up with a provision for the reduction of the basis of the assets of the debtor to the extent that Congress refrain[s] from taxing income which it would be en-

[4] We have put in italics the portion of § 270 added by further amendment in 1940. 54 Stat. 709.

titled, under the law, to tax."[5] Otherwise, there would in effect result a "double deduction" unfair to the revenue. The report of the Senate committee thus explained the purpose of § 270: "This provision is intended to avoid a double deduction. When debt forgiveness, resulting from a debt readjustment, is exempt from the tax upon income or profit, the cost of the property dealt with by the settlement is to be decreased, for future tax-valuation purposes, by an amount equal to the amount of the indebtedness canceled or reduced in the proceeding."[6]

■ As previously stated, the taxpayer here obtained no tax advantage from § 268, for upon consummation of the plan of reorganization the taxpayer realized no gain which would otherwise have been taxable under the provisions of the revenue acts. Hence, if § 270 is to be construed, as the Commissioner maintains, to require the taxpayer to take a reduced basis for the building, with consequent increase of its future tax liabilities, the result would be to create a new, substantial tax deterrent to bankruptcy reorganization—which is just the opposite of what Congress thought it was accomplishing in enacting §§ 268 and 270. Such tax disadvantage from basis reduction would not have resulted to the taxpayer by a conversion of debt into stock in a capital transaction outside the bankruptcy court. As the Supreme Court pointed out in the Claridge case, supra (323 U.S. at page 151, 65 S.Ct. at page 179, 89 L.Ed. 139): "And in cases where no benefit could be derived from Section 268, the effect of applying Section 270 was, if not to impose a capital levy, then to deny the new owners equal treatment, not only with other transferees under the code provisions, but with all other taxpayers." Further, the court commented: "Congress, in view of its original object in adopting Section 268, could not possibly have intended such consequences for Section 270." And it must be borne in mind that §§ 268 and 270 were not in their origin and purpose tax provisions for raising increased revenue, but were "essentially tax relief

provisions", having the primary object "to provide tax relief for parties undertaking reorganization and to prevent the clogging effects of the existing tax laws upon the operation of the Chandler Act." (323 U.S. at page 163, n. 35, 65 S.Ct. at page 184, 89 L.Ed. 139.)

It may be that § 270 is not aptly phrased so as to dovetail completely with § 268; in other words, it is possible that the reduction in basis required by § 270 is not entirely limited to cases where discharges of debt would have given rise to taxable gain but for the saving provision of § 268. As stated in the Claridge case (323 U.S. at page 151, 65 S.Ct. at page 179, 89 L.Ed. 139): "The legislative history gives the clear impression that adoption of the original Section 270 was a plain blunder, the consequences of which were not foreseen, understood or intended by those who finally gave it the form of law." But at least § 270, so far as the wording will permit, should be given an interpretation consistent with the "primary object" of Congress in enacting these related provisions of the Chandler Act.

Section 270 provides that "the basis of the debtor's property * * * shall be decreased by an amount equal to the amount by which the indebtedness of the debtor * * * has been canceled or reduced in a proceeding under this chapter." Literally, payment of a debt effects a reduction of indebtedness, but the Commissioner does not suggest that § 270 would require a corresponding reduction in basis in such a case. "Canceled or reduced" is apparently equivalent to "canceled in whole or in part", so the key word to be construed is "canceled." Was the taxpayer's bond indebtedness "canceled" within the meaning of § 270?

■ In May, 1938, the Commissioner ruled that the consummation of the plan of reorganization did not involve a "cancellation of indebtedness" within the meaning of Article 22(a)-14 of Treasury Regulations 94. It is true, the Commissioner was not then construing § 270 of the Bank-

---

[5] Hearings before House Committee on the Judiciary on H.R. 8046, 75th Cong., 1st Sess., 1937, p. 353.

[6] Sen. Rep. No. 1916, 75th Cong., 3d Sess., 1938, p. 7.

ruptcy Act, which had not yet been enacted. But we think that by a parity of reasoning, the taxpayer's bond indebtedness may be deemed not to have been "canceled" within the meaning of § 270 by the conversion of bonds into stock. The offer of stock, with its accompanying equity rights in the company, was good consideration for the surrender of the bonds; and this is so whether the par value of the stock or its then market value was greater or less than the face value of the bonds. The transaction may be considered a form of payment for the bonds, not cancellation.

The decision of the Tax Court is affirmed.