The **COLUMBIA GAS SYSTEM, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 68 Civ. 352.

United States District Court,
S. D. New York.

Dec. 9, 1971.

Cravath, Swaine & Moore, New York City, for plaintiff; George G. Tyler, Richard J. Hiegel, Roger D. Pearson, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., for defendant, United States; Alan B. Morrison, Asst. U. S. Atty., of counsel.

WYATT, District Judge.

This is a motion by plaintiff (Columbia) for summary judgment in its favor for "the relief demanded in the complaint". Fed.R.Civ.P. 56 The relief demanded in the complaint is a money judgment for $244,084.33 with interest and costs.

The action was commenced on January 25, 1968, and is for recovery of income taxes of $187,993.44 and interest thereon of $56,090.89 paid by Columbia for the years 1955–1958 inclusive ("the four taxable years") and alleged by Columbia to have been "wrongfully and illegally assessed against and collected from" Columbia. The Court is given jurisdiction of the action by 28 U.S.C. § 1346(a) (1).

Deficiencies were determined by the appropriate District Director of the Internal Revenue Service in respect of federal income taxes of Columbia (26 U.S. C. §§ 6211, 6212) for the four taxable years. Columbia elected to pay the taxes and interest to date of payment and timely filed claims for refund (26 U.S.C. §§ 6401, 6402, 6511). The claims were disallowed, and Columbia then commenced this action (26 U.S.C. § 7422).

The facts are not in dispute and both sides agree that summary judgment is appropriate. The government has made a cross-motion for summary judgment in its favor. The motion of Columbia is denied. The motion of the government will be granted.

Columbia in 1954 issued $50,000,000 of 3½% Subordinated Debentures due 1964. These debentures were convertible into common stock of Columbia at the rate of 7½% shares of Columbia common stock for each $100 principal amount of debentures (cash adjustment in place of fractional shares). Interest on the debentures was payable on May 10 and November 10 of each year. It was provided that no adjustment should be made on conversion "for interest accrued" or "for dividends" on stock issued on conversion.

Columbia computes its taxable income on the accrual method of accounting. 26 U.S.C. § 446(c) (2). Each month on its books Columbia accrued interest on the debentures. Each month also Columbia transferred to capital surplus account the amount of interest accrued and unpaid (at least, not paid in cash) in respect of debentures converted during that month into common stock.

In each of the four taxable years Columbia deducted as an interest expense all of the interest accrued and unpaid (at least, not paid in cash) on the debentures converted during that year. This interest will be referred to sometimes as "conversion interest". This was done in reliance on 26 U.S.C. § 163(a): "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness".

The Service audited the returns for 1955 and 1956 and increased the taxable income of Columbia by the amount of

the conversion interest. This was on the theory that "discharge of indebtedness" results in taxable income (26 U.S.C. § 61(a)(12)) and that the accrued conversion interest had been discharged by the conversion. Since the indebtedness discharged was the same interest indebtedness deducted by Columbia on its returns, the deduction was not disallowed. Of course, the increase in income by the same amount deprived Columbia of the benefit of the deduction.

Columbia paid the additional taxes for 1955 and 1956 on July 31, 1961. The audit reports of the examining agent for these years are dated August 1, 1961.

On audit of the returns for 1957 and 1958, the Service disallowed the conversion interest as a deduction for "interest . . . accrued". According to the claim for refund, the Service determined that "the holder lost his right to receive the interest upon conversion" and cited I.T. 2884 CB XIV–1, page 251—a citation which to me seems wide of the mark, whatever may be the merit of the determination made by the Service.

Columbia duly filed claims for refund for the four taxable years.

The claims for refund for 1955 and 1956 were filed on or about September 26, 1962. With these claims for refund, Columbia filed consents under 26 U.S.C. § 108(a).

The claims for refund for 1957 and 1958 were filed in 1965. Columbia explains that it did not file such consents for 1956 and 1957 because the Service did not require for those years that conversion interest be added to income.

The claims for refund were each disallowed.

a.

▮ If on conversion the accrued interest was paid by Columbia by issuance of its stock, then Columbia would be entitled to a deduction for "interest paid or accrued". 26 U.S.C. § 163(a)

If on conversion the accrued interest was discharged as indebtedness of Columbia (or, as Columbia puts it, "was cancelled or otherwise lost to the Debenture holders"), then such accrued interest should be included in income of Columbia. 26 U.S.C. § 61(a)(12)

The wording of the indenture and of the debenture itself does not clearly point to a decision as between the two constructions.

The indenture provided that, upon conversion: "There shall be no adjustments in respect of interest or dividends on the conversion of any Debenture or Debentures." Each debenture provided: "No adjustment is to be made on conversion for interest accrued hereon or for dividends on securities issued on conversion."

This language, while not clear, seems more to indicate that accrued interest is being cancelled than that it is being paid. The language seems to advise debenture holders that they should not expect on conversion to have any "adjustments in respect of interest", that is, they will not receive any money payment or credit or any consideration other than the shares of stock. The number of shares to be received on conversion was fixed when the debentures were first issued, regardless of the time of conversion. This means that the consideration to the debenture holder on conversion is exactly the same whether he converts immediately after an interest payment or immediately before an interest payment.

I conclude that on conversion the then accrued interest was discharged and was not paid.

The same result was reached in Bethlehem Steel Corp. v. United States, 434 F.2d 1357, 193 Ct.Cl. 459 (1970), a decision by the Court of Claims which I am unable to distinguish from the case at bar and which I am prepared to accept.

b.

▮ Columbia contends as to 1955 and 1956 that even if the conversion interest be determined to have been discharged by conversion, such conversion

interest should be excluded from taxable income under 26 U.S.C. § 108(a).

The Internal Revenue Code of 1939 contained the predecessor of present 26 U.S.C. § 108(a). This predecessor—which was new to the tax law—was Section 22(b) (9) of the 1939 Code, which provided that income to a corporation from discharge of indebtedness could be excluded from gross income if the corporation was in an "unsound financial condition" and if it filed *"at the time of filing the return"* (emphasis supplied) its consent to the regulations prescribed for the reduction of the basis of property held by the taxpayer.

In 1939, many corporations, especially railroads, were hard pressed financially and had a heavy debt load. Their bonds were selling below their face value which gave a great incentive to the corporations to purchase their own bonds at a discount and then to retire the indebtedness. Under then existing tax law, this would create income to the corporation and require payment of income tax thereon. Section 22(b) (9) was intended to aid such corporations. H.R.Rept. No. 855, pp. 4–5, 76th Cong. 1st sess.; S. Rept.No.648, pp. 2–3, 5, 76th Cong. 1st sess.

The effect of Section 22(b) (9) was to permit postponement of the payment of tax on income from discharge of indebtedness until the property, the basis of which was reduced, should be sold.

In 1942, Section 22(b) (9) was amended to eliminate its restriction to corporations in an "unsound financial condition". The Senate Report described this amendment as follows (S. Rept. 1631, pp. 77–78, 77th Cong. 2d sess.):

"Your committee has added an amendment which, by eliminating the requirement of unsound financial condition and permitting an election under section 22(b) (9) regardless of the financial condition of the corporate debtor, relaxes the standard established in 1939 and makes it possible for all corporations to have the advantages granted by this section without an impairment of their credit."

Under Section 22(b) (9) it was held by the Tax Court that a consent filed with an amended return was too late. Denman Tire & Rubber Co., 14 T.C. 706, 715–717, affirmed 192 F.2d 261 (6th Cir. 1951)

In 1951, Section 22(b) (9) was further amended to eliminate the requirement that the consent be filed "at the time of filing the return". In its place, a provision was inserted requiring the taxpayer to file the consent "at such time * * * as the Secretary by regulations prescribes". This is the language of the section of the 1954 Code applicable here, namely, 26 U.S.C. § 108(a). The reason for the change in 1951 was explained in a Senate Report (S.Rept. 781, pp. 59–60, 82d Cong. 1st sess.) as follows:

"Section 304 of your committee's bill makes a technical amendment to section 22(b) (9) to allow for greater flexibility as to the time for filing the required consent to a reduction of basis. Under the present law, the taxpayer must file its consent with its return for the taxable year. The bill amends the section to provide that the consent shall be filed at such time as the Secretary of the Treasury may prescribe. Under this amendment, the Department could continue to require that the consent be filed with the return in the ordinary case, but might make provision for filing of the consent at a later date in appropriate hardship cases."

At all relevant periods after at least January 6, 1956 (the Columbia return for 1955 was apparently filed on March 15, 1956), the regulation with respect to the *time* at which the consent must be filed was as follows (Treas.Reg. § 1.108(a)–2):

"In order to take advantage of the exclusion from gross income provided by section 108(a), a taxpayer must file with his return for the taxable year a consent to have the basis of his

property adjusted in accordance with the regulations prescribed under section 1017 which are in effect at the time of filing such return. See §§ 1.1017–1 and 1.1017–2. In special cases, however, where the taxpayer establishes to the satisfaction of the Commissioner reasonable cause for failure to file the necessary consent with his original return, he may file the consent with an amended return or claim for credit or refund . . .".

As noted, Columbia did not file any consents at any time as to 1957 and 1958.

As noted, Columbia did file consents as to 1955 and 1956 but did not "file with [the] return" as required by the regulation. Columbia filed the consents in September 1962 with the two claims for refund.

The consents were not timely filed under the regulation unless Columbia could establish "to the satisfaction of the Commissioner" that there was "reasonable cause for failure to file the necessary consent with [the] original return" and also that these were "special cases". The quoted wording is from the regulation.

While the record on this motion does not establish the grounds on which the claims for refund were disallowed, it may be safely assumed that one of the grounds was the failure to file the consents with the returns; in other words, the Commissioner was not satisfied that these were "special cases" or that "reasonable cause" had been established for failure to file the consents with the original returns.

It seems clear that whether consents in any given case are to be accepted if filed later than the original return, is a matter left by Congress and by the regulation solely to the discretion of the Commissioner. The only "reasonable cause" shown by Columbia for failure timely to file consents was in its claims for refund. There it was stated that the consents were not filed with the returns because "the Company determined that the interest accrued on its converted Debentures was not includible in gross income." The Company thus appears to have assumed the risk that its determination was correct. Against the possibility that its determination was not correct, the consents could easily have been filed.

Whether if an abuse of discretion could be shown it would be appropriate for the Court to act need not be decided. There seems to be no abuse of discretion shown here.

The motion is denied.

So ordered.