The **COLUMBIA GAS SYSTEM, INC.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 39, Docket 72-1269.

United States Court of Appeals,
Second Circuit.

Argued Oct. 16, 1972.

Decided Jan. 9, 1973.

George G. Tyler, New York City (Richard J. Hiegel, Roger D. Pearson, and Cravath, Swaine & Moore, New York City, on the brief), for appellant.

Milton Sherman, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., and Michael I. Saltzman, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Columbia Gas System, Inc. (Columbia) appeals from a judgment entered in the Southern District of New York, Inzer B. Wyatt, District Judge, 334 F.Supp. 1279 (S.D.N.Y.1971), granting the government's motion for summary judgment and dismissing the complaint in a tax refund action brought by Columbia to recover federal corporate income taxes and interest for the taxable years 1955, 1956, 1957 and 1958 in the aggregate amount of $244,084.33

claimed to have been erroneously assessed and collected.[1]

Three essential issues are involved on this appeal:

(1) Whether the conversion of debentures into Columbia's common stock as provided in a certain indenture constituted payment by Columbia of interest accrued on the debentures.

(2) Whether, on conversion, Columbia realized income in the form of discharge of indebtedness.

(3) Whether, for the taxable years 1955 and 1956, the refusal of the Commissioner to accept Columbia's consents to a reduction in the basis of its assets under Section 108(a) of the Internal Revenue Code[2] was an abuse of discretion.

Since we agree with the district court's application of the law to the undisputed facts, we affirm.

I.

In view of the district court's clear, comprehensive and detailed statement of the facts based on a stipulation by the parties, 334 F.Supp. at 1280–81, it is sufficient for our purpose to set forth here only such facts as are necessary to an understanding of our rulings below.

Under a 1954 indenture, Columbia issued $50,000,000 principal amount of 3½% subordinated debentures due 1964. Interest on the debentures was payable semiannually on May 10 and November 10. The debentures were convertible into Columbia's common stock at the rate of $13⅓ per share, or 7½ shares per $100 principal amount of debentures, with cash adjustments to be made in lieu of fractional shares. The indenture provided that "[t]here shall be no adjustments in respect of interest or dividends on the conversion of any Debenture or Debentures." Each debenture provided that "[n]o adjustment is to be made on conversion for interest accrued hereon or for dividends on securities issued on conversion."

Columbia used the accrual method of accounting. Each month it entered on its books as accrued interest debt the amount of interest earned on the debentures, and transferred to capital surplus the amount of interest accrued on debentures converted during the monthly accounting period.

On its federal income tax returns for the taxable years 1955 through 1958, Columbia deducted[3] as interest expense all of the interest accrued on the debentures, including the amount accrued on those debentures converted during the particular year. The District Director found this improper. His audit of the returns for the years 1955 and 1956 resulted in the determination of a deficiency of $127,910.64, plus $38,669.97 interest,[4] on the ground that Columbia, by failing to report its discharge of indebtedness as gross income,[5] had understated its taxable income. An audit of the returns for the years 1957 and 1958 resulted in the determination of a further deficiency of $60,082.80, plus

---

1. The district court's decision was rendered on the parties' cross-motions for summary judgment. Columbia's motion was denied, the government's was granted. Columbia appeals from the district court's decision and order, as well as from the judgment entered thereon.

2. Int.Rev.Code of 1954, § 108(a), 26 U.S.C. § 108(a) (1970).

3. Relying upon Int.Rev.Code of 1954, § 163(a), 26 U.S.C. § 163(a) (1970):

"There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

4. The District Director increased Columbia's taxable income for 1955 by $162,717.48, resulting in a deficiency of $84,613.09, plus $27,298.73 interest; and for 1956 by $83,264.52, resulting in a deficiency of $43,297.55, plus $11,371.24 interest.

5. Pursuant to Int.Rev.Code of 1954, § 61 (a)(12), 26 U.S.C. § 61(a)(12) 1970).

$17,420.92 interest.[6] While the same end was reached for the years 1957 and 1958 as for the years 1955 and 1956, the route was by disallowance of the deduction rather than by an addition to gross income. The additional tax for the years 1955 and 1956 was paid on July 31, 1961; that for the years 1957 and 1958 was paid on March 29, 1963.

Refund claims for the taxable years 1955 and 1956 were filed by Columbia on September 26, 1962, together with consents to reduce the basis of its assets pursuant to § 108(a) of the Internal Revenue Code.[7] Refund claims for the taxable years 1957 and 1958 were filed in March 1965, but not accompanied by § 108(a) consents.

The District Director disallowed the refund claims for each of the four years. He also refused to give effect to the § 108(a) consents on the ground that they had not been filed with the income tax returns for the years to which they related.

In January 1968, Columbia commenced the instant tax refund action in the district court, pursuant to 28 U.S.C. § 1346(a)(1) (1970), to recover $244,084.33 in income taxes and interest claimed to have been erroneously assessed and collected for the taxable years 1955–1958. The parties in due course filed a joint stipulation of facts. Each moved for summary judgment. In a well reasoned opinion, the district court held that on conversion the accrued interest was discharged and not paid; and that the Commissioner had not abused his discretion in refusing to accept the consents for the taxable years 1955 and 1956. Summary judgment was entered in favor of the government dismissing the complaint.

## II.

If, on conversion of the debentures, Columbia may be deemed to have *paid its accrued interest debt*, then the deduction for interest expense under § 163(a) of the Internal Revenue Code was wrongfully disallowed. On the other hand, if on conversion the accrued interest was *discharged as indebtedness* of Columbia, then such accrued interest should be included as income to Columbia. We believe that the latter is the correct construction and accordingly we uphold the ruling of the District Director and the district court.

In Bethlehem Steel Corp. v. United States, 434 F.2d 1357 (Ct.Cl.1970), the court ruled on a question strikingly similar to that presented here. There, Bethlehem had issued debentures, payable semiannually on May 1 and November-

---

6. The District Director increased Columbia's taxable income for 1957 by $91,755.69, resulting in a deficiency of $47,712.96, plus $14,423.69 interest; and for 1958 by $23,788.16, resulting in a deficiency of $12,369.84, plus $2,997.23 interest.

7. Int.Rev.Code of 1954, § 108(a), 26 U.S.C. § 108(a) (1970):
"(a) Special rule of exclusion.
No amount shall be included in gross income by reason of the discharge, in whole or in part, within the taxable year, of any indebtedness for which the taxpayer is liable, or subject to which the taxpayer holds property, if—
(1) the indebtedness was incurred or assumed—
(A) by a corporation, or
(B) by an individual in connection with property used in his trade or business, and

(2) such taxpayer makes and files a consent to the regulations prescribed under section 1017 (relating to adjustment of basis) then in effect at such time and in such manner as the Secretary or his delegate by regulations prescribes.
In such case, the amount of any income of such taxpayer attributable to any unamortized premium (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be included in gross income, and the amount of the deduction attributable to any unamortized discount (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be allowed as a deduction."

ber 1, convertible at the holder's option into Bethlehem's common stock. The indenture included a "no-adjustment" clause similar to that in the instant case, under which no credit would be given to the debenture holder for interest accrued or dividends payable. Bethlehem, like Columbia, used the accrual method of accounting. It deducted the interest accrued on debentures converted during the taxable year. The Internal Revenue Service disallowed the deductions, except as to interest actually paid and interest accrued on debentures not yet converted at the close of the taxable year.

There, as here, the taxpayer placed considerable reliance on the line of cases consisting of Hummel-Ross Fibre Corp., 40 B.T.A. 821 (1939); Shamrock Oil & Gas Corp., 42 B.T.A. 1016 (1940); and Central Electric & Telephone Co., 47 B.T.A. 434 (1942). The Court of Claims, in an opinion by Judge Davis, rejected that line of cases as dealing with the separable situation of a "mutual *ad hoc* evaluation and trade-off of relevant elements at the time of the conversion-exchange", 434 F.2d at 1359, rather than the situation of pre-fixed terms of conversion, as in the case before that court. We agree with that view of the *Hummel-Ross* line. In each of those cases, there was no prearranged terms of exchange; instead, the various companies, in subsequent endeavors at reorganization and recapitalization, effected an exchange of securities for outstanding indebtedness—an exchange in which accrued interest specifically was an integral part.

Here, we fail to perceive that essential element. The terms of exchange were prefixed and static. They took no account of the actual increase in accrued interest resulting from the passage of time between interest payments. They were not the subject of bargaining subsequent to the purchase of the debentures. The fluctuation in the price of the stock, while indeed always higher than the conversion price, was not at all affected by the increase in accrued interest during an interest period. These

facts, in our view, make the instant case indistinguishable from *Bethlehem.*

Columbia argues that, while *Bethlehem* may not be distinguishable, it should not be followed here because it was wrongly decided. Specifically, Columbia contends that the Court of Claims violated the basic principle that the substance, rather than the form, of a transaction should control its tax treatment. In *Bethlehem,* according to Columbia's argument, the court "viewed the deductibility or nondeductibility of accrued interest as turning solely on the language of the indenture". We do not so read the *Bethlehem* opinion. On the contrary, Judge Davis appears to have given conscientious attention to the "substance" of the transaction and to the surrounding circumstances. The distinction drawn between *Bethlehem* and the *Hummel-Ross* line was based on the *substantively* different fact of prefixed, as opposed to subsequently bargained for, conversion terms. Throughout the opinion, moreover, there are many indications that the court painstakingly grappled with "all the factors *pro* and *con*". 434 F.2d at 1359 (emphasis by the court).

It is for us to determine, of course, whether the *policy* of *Bethlehem* should be followed by us. At the core of the *Bethlehem* decision, as we read it, is the salutary view that, where the countervailing contentions on both sides are as substantial as they are here, a solution reflecting the equities should be sought:

"In this closely-balanced situation one cannot forget that Bethlehem was itself the drafter and the master of the trust indenture and of the debenture form. If it had written something like, 'On conversion, unpaid accrued interest on a debenture shall be deemed to be paid through receipt of the common stock exchanged for the debenture being converted', then it seems plain that the rule of Hummel-Ross Fibre Corps., 40 B.T.A. 821 (1939), *supra*, and Shamrock Oil & Gas Co., 42 B.T.A. 1016 (1940), *supra*, would apply. That language would

control the bargain struck—the accrued interest would be considered to have been paid on the conversion, and an interest deduction authorized. On the other hand, if the indenture had said, 'On conversion, any unpaid accrued interest on any debenture being converted shall be cancelled, forfeited, and not paid', then the principle of Capento Securities Corp.[8] . . . would govern, and no interest deduction would be allowed. See I.T. 2884, XIV–1 Cum.Bull. 151 (1935); Rev. Rul. 68–170, 1968–1 Cum.Bull. 71. Instead of using either of these unmistakable alternatives, Bethlehem put into the indenture the imprecise and unclear language: '*No adjustment shall be made* for interest accrued on any Debenture that shall be converted * * *' (emphasis added). The fuzzy words, 'no adjustment shall be made', are subject to either of the two polar interpretations for which the parties have been battling. The wording can, in reason, be read both ways, and a good argument can be made for each.

The preferable solution is to charge this ambiguity against Bethlehem, as the one responsible for the wording of the clause and the indenture." 434 F.2d at 1360.

■ The foregoing reflects more than a policy based on the mere formality of contractual language. Rather, it reflects a considered realization that the drafter of an agreement is in the best position to relieve a potentially ambiguous provision of such ambiguity; and in fairness no one is better placed to bear the consequences of the drafter's failure to state the contractual terms in language favorable to it than the drafter itself. United States v. Seckinger, 397 U.S. 203, 216 (1970); J. W. Bateson Co. v. United States, 450 F.2d 896, 902 (Ct. Cl.1971). Here, Columbia was certainly capable of framing the "no-adjustment" clause to avoid the very confusion that has given rise to this litigation.

Like the district court, we view *Bethlehem* as a decision which we are "unable to distinguish from the case at bar and which [we are] prepared to accept." 334 F.Supp. at 1281.

III.

■ Columbia next argues that, even if the accrued interest is not held to have been paid on the conversion of the debentures, no income was realized by Columbia in the form of discharge of indebtedness under § 61(a)(12) of the Internal Revenue Code. We disagree.

The inquiry in this regard does not differ significantly from that concerning the propriety of a § 163(a) deduction. In either case, a critical question in the determination of whether there was payment or cancellation of indebtedness is whether the parties had reached an agreement as to the treatment of interest upon the exercise of the conversion option. In Bethlehem Steel Corp. v. United States, *supra*, the terms of conversion were established when the debentures were issued; those terms, as we have indicated above, included a fixed rate and a "no-adjustment" clause, under which the amount of accrued interest was immaterial to the conversion price. The Court of Claims viewed the interest as not paid, and the extinction of the debenture was deemed incidentally to discharge the accrued interest in-

8. In Capento Securities Corp., 47 B.T.A. 691 (1942), aff'd on other grounds, 140 F.2d 382 (1 Cir. 1944), the Board concluded that, while the transfer of bonds for preferred stock there involved was in fact a non-taxable reorganization, the unpaid interest on the bonds was cancelled and not an item in the recapitalization plan: "The cancellation of the interest is not explained in the evidence. The fact of cancellation is all that appears. By cancellation assets were freed of the burden of the interest debt, and there was no corresponding obligation in the preferred shares, for they were issued at a par value only equal to the principal of the bonds." 47 B.T.A. at 696.

debtedness. In our view, the present case is on all fours with *Bethlehem*. We reach the same result.

The bankruptcy cases relied on by Columbia that hold otherwise do not compel the opposite result here. In Commissioner v. Motor Mart Trust, 156 F.2d 122 (1 Cir. 1946), for example, the court affirmed a decision of the Tax Court that had held the retirement of all existing securities of a bankrupt corporation, and the consequent issuance of new securities, to be a reorganization which gave rise to no taxable income. See also Tower Building Corp., 6 T.C. 125 (1946); Alcazar Hotel, Inc., 1 T.C. 872 (1943); Rev.Rul. 179, 1956–1 Cum.Bull. 187. Cf. Los Angeles Shipbuilding & Drydock Corp. v. United States, 289 F. 2d 222 (9 Cir. 1961). These rulings, while undoubtedly correct in the context of the issues there involved, in our view are not illuminating on the entirely distinct question whether the conversion of a debenture of a solvent corporation, under terms established at the time of the issuance of the debenture, constitutes a reorganization or recapitalization. We are unaware of any authority holding that a reorganization or recapitalization results from such a conversion.

Columbia points to Liquid Carbonic Corp., 34 B.T.A. 1191 (1936), as a case in support of its position. There, the Board said that "the conversion of bonds into capital stock of the obligor is purely a capital transaction; that is, a readjustment of the obligor's capital structure, which does not result in either a deductible loss *or a taxable gain.* The obligor does not pay out anything. It merely readjusts its capital." 34 B.T.A. at 1196 (emphasis added). The issue there, however, related to the deductibility of unamortized bond discount and expense, not of interest accrued. It is distinguishable on that ground.

The critical aspect of this issue, as with the question of a deduction under § 163(a), is a factual one. In Alcazar Hotel, Inc., *supra*, for example, the court

concluded that the facts disclosed no intent to discharge the interest indebtedness. In Capento Securities Corp., 47 B.T.A. 691 (1942), aff'd on other grounds, 140 F.2d 382 (1 Cir. 1944), on the other hand, the Board concluded that the absence of a contrary explanation indicated an intent to cancel the accrued interest. Here, the district court implicitly found that the contractual terms and the surrounding circumstances of the conversion transaction evidenced an intent to discharge the indebtedness. 334 F.Supp. at 1281. We find no basis for overturning that finding as clearly erroneous.

We hold that Columbia realized income from the discharge of indebtedness under § 61(a)(12), and that the deficiency assessment accordingly was correct.

### IV.

■ Finally, Columbia claims that the Commissioner abused his discretion in refusing to accept Columbia's consents to a reduction in the basis of its assets for the taxable years 1955 and 1956. We hold that there was no abuse of discretion.

Under § 108(a) of the Internal Revenue Code,[9] a corporate taxpayer may exclude from its gross income the amount of discharged indebtedness, upon the filing, and acceptance by the Commissioner, of a consent to the reduction in the basis of the taxpayer's assets. The Treasury has promulgated regulations regarding the timeliness of such consents, in both normal and "special" cases:

"In order to take advantage of the exclusion from gross income provided by section 108(a), a taxpayer must file *with his return for the taxable year* a consent to have the basis of his property adjusted in accordance with the regulations prescribed under section 1017 which are in effect at the time of filing such return. See §§ 1.-

---

9. See note 7, *supra*.

1017–1 and 1.1017–2.[10] *In special cases, however, where the taxpayer establishes to the satisfaction of the Commissioner reasonable cause for failure to file the necessary consent with his original return, he may file the consent with an amended return or claim for credit or refund*; and in such cases, the consent shall be to the regulations which, at the time of filing the consent, are applicable to the taxable year for which such consent is filed . . . ."[11] Treas.Reg. § 1.108(a)–2 (1956) (emphasis added).

Columbia filed § 108(a) consents for the years 1955 and 1956 with its claims for refunds for those years.[12] It claims that this was permissible since this is a "special case" under Regulation § 1.-108(a)–2, and that the Commissioner therefore wrongfully refused to accept the consents. We disagree.

Both Congress, in § 108(a), and the Treasury, in Regulation § 1.108(a)–2, have indicated a clear intent to vest in the Commissioner broad discretion regarding the acceptance of late-filed consents. By the terms of the Regulation, the taxpayer must establish "to the satisfaction of the Commissioner reasonable cause for failure to file the necessary consent with his original return . . . ." The "reasonable cause" asserted by Columbia is that at the time of the filing of the original returns "it was unaware of the possibility that it might be deemed to have realized income from the discharge of indebtedness upon conversion of its Debentures."

The question of whether Columbia's "reasonable cause" is sufficient under the Regulation is a close one. Its argument that under the Code there are "at least 78 elections" that a taxpayer must make in order fully to anticipate every possible adverse ruling by the Commissioner, is well taken. What set this election apart, in our view, was the predictability of the Commissioner's challenge to Columbia's return. "Reasonable cause" is not defined in the Regulation. It seems unlikely, however, that the phrase was meant to be so broad as to encompass this claim which is based at worst upon mere hindsight or at best upon an unexpected ruling by the Commissioner. We are unable to perceive any more involved here. Columbia, moreover, was at all times fully aware of all of the material facts of the transaction. Cf. Denman Tire & Rubber Co. v. Commissioner, 192 F.2d 261 (6 Cir. 1951). True, no decision had squarely held accrued interest to be income and not deductible. But it is also true that considerable doubt surrounded the application of §§ 163(a) and 61(a)(12) to the conversion of Columbia's debentures. Prudence would seem to have demanded that the § 108(a) consents be filed against the possibility that the Commissioner would reach a conclusion other than that sought by Columbia.

In any event, we are unable to say, in view of the broad discretion vested in the Commissioner under Regulation § 1.-108(a)–2, that he abused his discretion, and much less that the district court was clearly erroneous in finding that he did not.[13]

Affirmed.

10. The indicated regulations primarily are concerned with the mechanics of the process of adjusting a taxpayer's basis.

11. All of the applicable regulations were promulgated on January 7, 1956, in T.D. 6158, 1956–1 Cum.Bull. 81; consequently, the same regulations were in effect on the dates of the filing of the returns as on the dates of the filing of the consents.

12. Consents were not filed for the years 1957 and 1958 "because the adjustment made by the Internal Revenue Service on audit of [the] returns for those years took a different form from that made in the earlier years. On audit of its 1955 and 1956 returns, the accrued interest was added to Columbia's income, whereas for 1957 and 1958 the accrued interest was disallowed as a deduction." Appellant's Brief at 26.

13. Another court, in Kean v. Commissioner, 469 F.2d 1183 (9 Cir. 1972), recently has overturned a refusal to accept a consent under § 1372 as an abuse of discretion. There, however, the "reasonable cause" for the failure to file was much

MANSFIELD, Circuit Judge (concurring and dissenting):

I dissent from that part of the majority opinion which deals with the taxpayer's attempt to reduce the basis of its assets for the years 1955 and 1956 by filing consents pursuant to § 108(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 108(a). In my view the Commissioner's refusal to give effect to the consents filed by Columbia on the ground that they had been filed too late was, under the circumstances in this case, plainly arbitrary.

With the aid of hindsight we are able to say that Columbia should have filed the consents at the time when it filed its 1955 and 1956 returns. But looking at the situation as of that time it must be recognized that the 1954 Internal Revenue Code offered at least 74 elections as to the configuration in which the Commissioner might seek to restructure a transaction described in a taxpayer's return. See Budlong, How to Avoid—Or Amend—Improper Tax Elections Despite the Many Uncertainties, 21 J.Taxation 298, 302 (1964) (list of 78 elections); Schwanbeck, Elections and Options Available to Taxpayers in the 1954 Code, 32 Taxes 748, 752 (1954) (list of 74 elections). I believe it is unreasonable and unrealistic to assert that the taxpayer should have anticipated in 1955 and 1956 that the District Director would years later contend that income had been realized from cancellation of indebtedness upon conversion of the Debentures, much less the specific ground on which the contention would be based.

When Columbia, concededly acting in good faith, filed the returns, it had no reason to believe that the transaction was one which might require the filing of consents since it reasonably believed that accrued interest was paid by the de-

livery of its common stock upon conversion of the Debentures. It was not until years later, when its returns were audited, that the deduction for interest paid or accrued, which had been taken by the taxpayer pursuant to 26 U.S.C. § 163(a), was disallowed. Thereupon Columbia promptly paid the additional taxes assessed, filed its claims for refunds, which were disallowed, and promptly filed the consents pursuant to § 108(a). It was not until the Government later filed its memorandum of law in the present suit that the Commissioner's theory finally came to light.

The first definitive decision on the merits of the central issue before us was not handed down until 1970, Bethlehem Steel Corp. v. United States, 434 F.2d 1357, 193 Ct.Cl. 459 (1970). As Judge Davis wrote in that case, the issue of whether conversion of debentures would represent in part the payment of accrued interest was a "closely-balanced" one in which the taxpayer had "substantial grounds for its stance," adding: "We do not find the choice readily foreordained or easy to come by. The scales continue to sway from side to side and do not promptly come to rest." Id. at 1360. Since Columbia acted in good faith and could not reasonably have anticipated the position later taken by the Commissioner, there was no reason for it to file the consents in 1955 and 1956 against the possibility that its deduction of the interest might be disallowed.

Treas.Reg. § 1.108(a)–(2), promulgated pursuant to § 108, provides:

"In special cases, however, where the taxpayer establishes to the satisfaction of the Commissioner reasonable cause for failure to file the necessary consent with his original return, he may file the consent with an amended return or claim for credit or refund. . . . ."

clearer. A shareholder was refused an extension of time to file a Subchapter S election because of a co-shareholder's nonconsent. The co-shareholder was not a shareholder of record, and did not consider his consent necessary. The other share-

holders, the taxpayers in the case, had no reason to suspect that the consent of the co-shareholder might have been necessary, and therefore knowledge of the material facts could not be imputed to them.

Viewed in context, the taxpayer's predicament clearly constituted a special case in which there obviously was "reasonable cause for failure to file the necessary consent with [its] original return."

Although the Commissioner has discretion as to whether to allow late filing, his discretion is not absolute. In my view his refusal to accept the late filing in this case was arbitrary and unreasonable. See Kean v. Commissioner, 469 F.2d 1183 (9th Cir., filed Nov. 14, 1972); Calavo, Inc. v. Commissioner, 304 F.2d 650 (9th Cir. 1962); Mamula v. Commissioner, 346 F.2d 1016 (9th Cir. 1965); The Welworth Realty Co., 40 B.T.A. 97 (1939), acquiesced in 1939–2 Cum.Bull. 39. In recently holding that the District Director abused his discretion in refusing under similar circumstances to allow a taxpayer an extension of time in which to file consents, the Ninth Circuit said:

> "There was reasonable cause for Murdock MacPherson's failure to file a timely consent. Murdock MacPherson was not a shareholder of record. He believed that whatever ownership interest he had in the shares did not necessitate his consent to Bowl's election. When the Internal Revenue Service disagreed with this position, the petitioners sought a judicial determination. Until the Tax Court issued its opinion, Murdock MacPherson did not know that his consent was required to consummate Bowl's election under § 1371.
>
> \* \* \*
>
> "The District Director abused his discretion by arbitrarily refusing to allow petitioners an extension of time in which to file their consent to Bowl's Subchapter S election." Kean v. Commissioner, *supra* 469 F.2d 1189.

The case of Denman Tire & Rubber Co. v. Commissioner, 192 F.2d 261 (6th Cir. 1951), relied upon by the Government, is clearly inapplicable for the reason that it predated the promulgation in 1953 of the above-quoted regulation authorizing the Commissioner to permit late filing of a consent upon a showing of "reasonable cause."

Accordingly, I would reverse the district court's decision to the extent that it upheld the Commissioner's refusal to give effect to the late-filed consents.